# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA

PAULA J. PHILLIPS, individually and on
behalf of all others similarly situated,

Plaintiff,

vs.

DENTSPLY SIRONA INC.,

Defendant.

Civil Action No.:

_____

## COMPLAINT[1]

Plaintiff PAULA J. PHILLIPS, individually and on behalf of others similarly situated, files

this class action complaint against Defendant DENTSPLY SIRONA INC. ("Defendant

Dentsply"), and alleges as follows:

## INTRODUCTION

1.      This is a one-count complaint alleging a violation of the Florida Deceptive and

Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.* It concerns Defendant

Dentsply's deceptive marketing of Byte Aligner Systems and Impression Kits (hereinafter the

"Products").

2.      To be sure, Defendant Dentsply did not act alone. Customers contracted to purchase

the Products from Defendant Dentsply's wholly owned subsidiary Straight Smile, LLC, d/b/a Byte

("Byte"). And Byte also marketed the Products; however, Defendant Dentsply itself promoted the

---

[1] This matter was previously pending in the U.S. District Court for the Southern District of Florida
under case number 1:25-cv-21074-GAYLES/SHAW-WILDER. On March 30, 2026, by way of
docket entry 72, that Court entered an Order for providing for Plaintiff to re-file her lawsuit before
this Court.

Products as safe and effective in fixing crooked teeth and malformed smiles, when in truth the Products were ineffective and dangerous. This is evidenced by thousands of reported adverse events and Byte's abrupt cessation of sales in the fall 2024. Importantly, Defendant Dentsply has independent statutory liability for its conduct in furthering this false and deceptive business practice to the detriment of consumers.

**PARTIES**

3.      Plaintiff Paula J. Phillips is a resident of Broward County, Florida, with a law office in Miami-Dade County, Florida. For twenty-nine years, she has been a member in good standing with the Florida Bar. At all relevant times, she has resided and practiced law in South Florida.

4.      Defendant Dentsply Sirona Inc. is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

**JURISDICTION AND VENUE**

5.      This Court has original jurisdiction over all causes of action asserted herein under 28 U.S.C. § 1332(d) because (a) one or more Class members are citizens of a state that is different from the citizenship of Defendant Dentsply; (b) the number of members of the putative class is more than 100; (c) the amount in controversy in the aggregate for the putative class exceeds the sum of $5 million, exclusive of interest and costs; and (d) the primary Defendant does not include States, State officials, and/or other governmental entities against whom the Court may be foreclosed from ordering relief.  This Court also has original jurisdiction under 28 U.S.C. § 1332(a) because there is diversity of citizenship between Plaintiff Ms. Phillips and Defendant Dentsply and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Defendant Dentsply pursuant to N.C.G.S.A. § 1-75-4(1)(d) because Defendant Dentsply's principal place of business is in

2

Charlotte, North Carolina and therefore it is "engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." Additionally, given Defendant Dentsply's presence in Charlotte, North Carolina, this Court may exercise jurisdiction over Defendant Dentsply consistent with the Fourteenth Amendment's Due Process Clause.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Venue is also proper under 28 U.S.C. § 1391(d) because Defendant Dentsply is subject to personal jurisdiction in this District in accordance with the terms of that provision.

## FACTUAL ALLEGATIONS

### I. Defendant Dentsply Engaged in Misleading and Deceptive Sales Practices

#### A. Defendant Dentsply's False and Misleading Statements

8. On or about December 31, 2020, Defendant Dentsply entered an all-cash transaction to purchase 100% of Byte for $1.04 billion. In a January 4, 2021, press release published by Defendant Dentsply announcing the purchase, Defendant Dentsply described Byte as a "leading direct-to-consumer, doctor-directed clear aligner company" and heralded Byte as boasting "a leadership position in the rapidly growing direct-to-consumer, doctor-directed clear aligner market." Defendant Dentsply added, "Byte was founded on the commitment to improve access and affordability to orthodontic care…[by offering] effective treatment planning and an easy-to-use clear aligner solution delivered directly to a consumer's home."

9. Moreover, in the same press release, Defendant Dentsply made several statements vouching for and touting the Products. Defendant Dentsply represented that it would contribute research, development, and commercial expertise, and it emphasized the alleged involvement of dental professionals with respect to the Products. It stated, Defendant "Dentsply Sirona's R&D capabilities and ***commercial expertise offer significant potential to drive additional growth of***

3

***Byte clear aligner solutions.*** The combination with ***Dentsply will focus on expanding the market for orthodontic care by connecting additional patients with dental professionals and helping them access quality oral health care***." (Emphasis added).[2]

10. The press release bears the logos of both Defendant Dentsply and Byte side-by-side, together with photos of their respective CEOs at the time:[3]





Fig. 1: Dentsply Sirona is the world's largest manufacturer of professional dental products and technologies.

Fig. 2: Byte® holds a leadership position in the rapidly growing direct-to-consumer, doctor-directed clear aligner market.





Fig. 3: Don Casey, Chief Executive Officer at Dentsply Sirona

Fig. 4: Neeraj Gunsagar, CEO of Byte

11. In addition to promoting Byte and the Products, Defendant Dentsply used the press release to direct consumers to the Byte website to purchase the Products. In the press release, immediately following a series of promotional statements regarding Byte and the Products, Defendant Dentsply included a link to Byte's website for readers to purchase the Products:[4]

---

[2] *Id*.
[3] *Id*.
[4] *Id*.

**About Byte**

Byte's doctor-directed clear aligner system provides customers' nationwide access to at-home invisible aligners for a straighter, whiter smile. With a growing team of over 450 employees and headquartered in Los Angeles, Byte's nationwide network of licensed dentists and orthodontists prescribe and oversee every customer's treatment plan, delivering a top-rated consumer experience and results in up to half the time and cost of traditional methods. At under $85 per month, Byte has found a way to make the inaccessible, accessible — providing an easy, convenient and affordable way to upgrade your smile through the Byte Teledentistry platform. For more information on Byte, visit: www.byteme.com.

12. On January 4, 2021, Defendant Dentsply published the press release on its publicly available website, where it has remained continuously publicly available from that date through the present date. It also disseminated the press release widely to media outlets in order to ensure that it reached as much of the consumer market for dental aligners as possible.

13. Further touting the involvement of dental professionals, also on January 4, 2021, Defendant Dentsply posted on Instagram that the Byte acquisition meant it would ***"strengthen our strong connection to dental professionals*** and meet the needs of people around the world by providing them an opportunity to improve their smiles." (Emphasis supplied). The posting includes a photograph of a young female happily fitting a Byte Aligner in her mouth:



14. Defendant Dentsply's Instagram post has remained continuously publicly available from the time of its online posting on January 4, 2021, through the present date.

15. As in the case of its January 4, 2021, press release, Defendant Dentsply used the Instagram post to direct consumers to the Byte website to purchase the Products. Defendant Dentsply included in the Instagram post an active link whereby viewers can easily click and be directed to Byte's website in order to purchase the Products.

16. For its part, Byte's business model was premised on mailing directly to consumers an impression kit to enable a consumer to make a mold of his or her teeth at home. Consumers

then mail these impressions back to Byte for analysis, which Byte then uses to develop a treatment plan and deliver several sets of clear aligners directly to consumers. The aligners are supposed to fit in the customer's mouth to shift that customer's teeth towards the desired outcome. But unlike more traditional teeth aligners (e.g., Invisalign or Defendant Dentsply's own SureSmile), there is no in-person assessment by a dentist or orthodontist. Byte contracts to sell the Products to consumers without a dentist or orthodontist ever seeing or speaking to the consumer.

17. The only way a consumer can purchase Byte's impression kits and aligners is through Byte's website. This is the same website that Defendant Dentsply directed consumers to by way of its January 4, 2021, press release and Instagram posting.

18. Due to its relatively low cost as compared to traditional teeth aligners, Defendant Dentsply knowingly targeted the Products to low-income consumers. For example, during an October 25, 2024, publicly available conference call held by Defendant Dentsply, its CEO Simon Campeon stated that, "we think that the aligners and teledentistry are, are necessary for … to connect the underserved patient populations that may not be able to access it…."[5] And Defendant Dentsply's above-captioned Instagram post's reference to "providing" people "around the world" with an "opportunity to improve their smiles" is clearly intended to emphasize the Products' affordability.

19. Although the Products do not involve direct dentist/patient contact, Defendant Dentsply nevertheless represented to consumers that dental professionals signed off on the Products. This was intended to assure consumers that the Products were safe and effective notwithstanding the lack of an in-person dental examination. Consistent with Defendant

---

[5] Webcast of Dentply Sirona Conference Call on Byte Aligner Products, Oct. 25, 2024, at 00:19:44 (previously available at https://investor.dentsplysirona.com/events/event-details/dentsply-sirona-conference-call, last accessed Apr. 13, 2025).

Dentsply's January 2021 press release, Byte's website claims, "we work with a ***nationwide network of licensed orthodontists and dentists who prescribe every treatment plan*** of our invisible aligners to deliver professional results." (Emphasis supplied). Importantly, this statement appears next to Defendant Dentsply's logo and name as shown below, which communicates that Defendant Dentsply vouches for the statements:[6]



## About us

At Byte, we believe in making the inaccessible, accessible. Our oral care platform makes it easier and more affordable for all people to get the smile and confidence they've been dreaming about. Headquartered in Los Angeles, we work with a nationwide network of licensed orthodontists and dentists who prescribe every treatment plan of our at-home, invisible aligners to deliver fast, professional results for a fraction of the cost of traditional options. We set out to improve peoples' lives by helping them achieve a healthy and confident smile they are proud of.

As an accredited member of the BBB with thousands of 5-star reviews, and a proud member of the American Teledentistry Association, we're pushing oral care forward every single day.

20.    The above-captioned text alongside Defendant Dentsply's logo and name appeared on the Byte website at least as early as July 31, 2024. Discovery may reveal that it first appeared on the website before that date. It remained continuously publicly available on the Byte website from its first publication through at least April 13, 2025.

21.    Additionally, Byte's website represented that the Products were "backed" by Defendant Dentsply: "***Backed by Defendant Dentsply Sirona, the world's largest manufacturer***

---

[6]    Byte, About Us as of July 31, 2024 (available at https://web.archive.org/web/20240731125307/https://www.byte.com/pages/about-us, last accessed April 16, 2026).

*of professional dental products*, we're making it easier for everyone to get the smile of their dreams—and gain the confidence they deserve:"[7]



Backed by Dentsply Sirona, the world's largest manufacturer of professional dental products, we're making it easier for everyone to get the smile of their dreams—and gain the confidence they deserve.

(Emphasis supplied). This appeared on the homepage of Byte's website, i.e., the page that one first sees upon initially visiting the website.

22. The above-captioned statement containing Defendant Dentpsly's name appeared on the homepage of Byte's website at least as early as December 13, 2023. Discovery may reveal that it first appeared on the website before that date. It remained continuously publicly available on the Byte website from its first publication through at least April 13, 2025.

23. As noted above, the only way a consumer can purchase Byte's impression kits and aligners is through Byte's website. As such, any consumer who purchases the Products accesses

---

[7] Snapshot of Byte Homepage as of December 13, 2023 (available at https://web.archive.org/web/20231213174533/https://www.byte.com/, last accessed April 16, 2026).

9

the website and the statements published on the website, including the above-captioned statements on Byte's website.

24. Although the above-captioned statements are on Byte's website and Byte is a separate entity from Defendant Dentsply, they are nevertheless attributable to Defendant Dentsply and render Defendant Dentsply liable. This evidenced by Defendant Dentsply's conduct demonstrating an intent to adopt those statements as its own. This includes the following:

(a) Defendant Dentsply intentionally promoted Byte and the Products, including but not limited to, through its January 4, 2021, press release and Instagram post.

(b) Defendant Dentsply directed consumers to Byte's website to purchase Byte's Products, as evidenced by the links included in its January 4, 2021, press release and Instagram post.

(c) Defendant Dentsply did not object to the inclusion of its name and logo together with the above-captioned statements on the Byte website, as evidenced by the fact that Defendant Dentsply's name and logo appeared with these statements on the website for many months, and even well after Byte ceased taking new orders in October 2024.

and

(d) Defendant Dentsply was directly engaged in an overall effort and promotional campaign to target consumers for the specific purpose of directing them to the Byte website to purchase the Products. Its leadership has admitted as much in public statements throughout the years. For example, in a September 15, 2021, investor conference, Defendant Dentsply's former CFO Jorge M. Gomez said Defendant Dentsply was rigorously targeting Byte sales to appropriate patient candidates while "directing traffic of complicated cases that cannot be handled by Byte"

elsewhere.[8] And during an analyst call on March 29, 2022, Defendant Dentsply's former CEO Donald Casey Jr. noted his intimate knowledge of Byte sales data:

> The nice thing about Byte, literally at the end of every day I see what they did. I mean I can tell you, week-by-week, day-by-day how many aligner trials did we sell, how many what we call S1s, how many people who we sent molds to, how many actually converted into Byte?[9]

Also, during Defendant Dentsply's May 3, 2023, earnings call, a Dentsply executive explained how Defendant Dentsply was "really looking at the quality of the funnel and how we're targeting customers" for Byte aligners.[10]

25.     Through the above-described conduct and other conduct that will be developed in discovery, Defendant Dentsply adopted and vouched for the above-described statements on Byte's website, and so those statements are attributable to Defendant Dentsply.

26.     Defendant Dentsply made similar representations about the involvement of dental professionals with the Products in public securities filings. For example, in its FY 2021 and FY 2022 annual reports on SEC Form 10-K, Defendant Dentsply represented that, "***Byte contracts with an expansive nationwide network of independent licensed dentists and orthodontists*** for the provision of clinical services, including the oversight and control of each customer's clinical

---

[8] Amended Complaint, D.E. 51*, ¶ 69, In re Dentsply Sirona, Inc. Securities Litigation*, No. 24-cv-9083 (E.D.N.Y. May 9, 2025). This is a pending federal securities class action against Defendant Dentsply on behalf of its shareholders, also arising out of Defendant Dentsply's false public statements about Byte. It includes quotes and summaries of documents and witness accounts. (*Id*. ¶¶ 66-89, 132-134, 160-172, 353). It is backed by sworn declarations from the plaintiffs. (D.E. 51-1, 51-2, No. 24-cv-9083, E.D.N.Y. May 9, 2025). On January 16, 2026, the court presiding over the securities fraud case entered a detailed 67-page order granting in part and denying part motions to dismiss, which left the claims and allegations of fraud against Defendant Dentsply largely intact. As found by the court, the securities fraud victims sufficiently pled that Defendant Dentsply and certain corporate executives "made false or misleading statements, with scienter, regarding (i) doctor-directed and overseen care, (ii) Byte's screening processes and 'conversion rate,' (iii) FDA reporting, and (iv) 'organic' growth." D.E. 90 at 66.
[9] *Id.* ¶ 87.
[10] *Id.* ¶ 71

treatment in order to comply with these regulations and ensure that the business does not violate rules pertaining to the corporate practice of dentistry." (Emphasis supplied).[11] The FY 2021 10-K was published on March 1, 2022, and the FY 2022 10-K was published on March 1, 2023.[12]

27.     By and through these and other similar statements, Defendant Dentsply represented to the public and consumers that the Products were safe and effective for the treatment of misaligned teeth and that consumers' use of the Products were overseen and directed by a network of qualified dental professionals.

28.     Defendant Dentsply's representations regarding the Products carry particularly heavy weight given the role that Defendant Dentsply uniquely occupies in the market for dental supplies. Formed by the 2016 merger of Defendant Dentsply International and Sirona Dental Systems, Defendant Dentsply is the world's largest manufacturer of professional dental products and technologies. It is a publicly traded company that employs more than 650 engineers and scientists and approximately 15,000 people with operations in more than 40 countries worldwide, has a sales presence in more than 120 countries and boasts billions in revenue annually.

### B. The Falsity of Defendant Dentsply's Promotional Statements

29.     Defendant Dentsply's representations regarding the Products, however, were false, deceptive, and misleading. Among other things, the Products were not sufficiently overseen, reviewed, or directed by dental professionals. According to the FDA's publicly available

---

[11]   FY 2021 & FY 2022 Form 10K, Dentsply Sirona Inc. (available at https://investor.dentsplysirona.com/static-files/d965cdcd-377b-4ffa-a0e4-4c5be486b483 & https://investor.dentsplysirona.com/static-files/3af02d8d-f2ba-4d60-99ad-7bc55193f2b6, last accessed: Feb. 24, 2025).

[12] Defendant Dentsply's Form 10-K's filed with SEC, available at EDGAR Search Results (last accessed: Mar. 4, 2026).

Manufacturer and User Facility Device Experience ("MAUDE") database, from January 1, 2021 to October 31, 2024, there were over 2,500 reported incidents involving adverse events associated with the Products. These incidents involved a broad range of complications suffered by customers, including the following:

(a) Allergic reactions

(b) Bite misalignment

(c) Bone loss

(d) Breaking and chipping of teeth

(e) Choking on aligners due to poor fit

(f) Cutting of gums due to aligners' sharp edges

(g) Facial swelling and abscess in mouth

(h) Gum recession and flaring of teeth

(i) Jaw clicking

(j) Locked jaw

(k) Loosening of teeth

(l) Loosening of veneer

(m) Periodontal disease

(n) Pulp necrosis resulting in a dead tooth

(o) Severe open bite

(p) Tooth discoloration

(q) Tooth fracture

(r) Worsening of patient bite

13

30. The fact the Products are associated with so many adverse effects confirms that, contrary to Defendant Dentsply's (mis)representations, there was not sufficient medical oversight of the Products, and the Products were not safe and effective in the treatment of misaligned teeth.

31. Defendant Dentsply had knowledge of this extensive and consistent pattern of contraindications and adverse effects associated with the Products. From January 1, 2021, through at least October 31, 2024, a Vice President in Defendant Dentsply's Regulatory Affairs Department or its Quality Systems Department served as the point of contact for Byte-related adverse event reports filed with the U.S. Food and Drug Administration. As part of their FDA reporting role, Defendant Dentsply's quality executives had access to all patient complaints – including both "serious" complaints (those involving injury) and "non-serious" complaints – through a sophisticated database called Trackwise, a quality management system purpose-built for FDA reporting. Nevertheless, Defendant Dentsply continued to market and promote the Products to consumers as safe and effective in the treatment of misaligned teeth.

32. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

## II. Defendant Dentsply Publicly Admits to the Products' Flaws

33. On October 24, 2024, Defendant Dentsply was finally forced to announce that Byte would no longer be selling Byte Aligner Systems and Impression Kits to consumers. In a press release, Defendant Dentsply cryptically and oddly portrayed this as a mere "suspension" of sales

14

and marketing for an unspecified "review of certain regulatory requirements," in consultation with the government.[13]

34.     The following day, on October 25, 2024, Defendant Dentsply's CEO Simon Campeon publicly acknowledged the inherent flaw in the Byte Products business model—its wholesale lack of true oversight by dental professionals. In a publicly available conference call with investors, Campeon stated:

> Through this process and in connection with our ongoing discussions with FDA, we have determined that our patient onboarding workflow may not provide adequate assurance that certain contraindication contraindicated [sic] patients do not enter treatment with Byte aligners.[14]

35.     Even then, notwithstanding the volume and variety of adverse incidents reported to the FDA, Campeon minimized the harm suffered by consumers. He went on to state:

> While we continue to believe the potential risk to patients remains low, we made the decision to voluntarily suspend sales and marketing for these products as we conduct our review.[15]

36.     However, given its access to internal complaint records and government reporting role, Defendant Dentsply knew that serious adverse effects were associated with the Products well before late October 2024. As such, Defendant Dentsply continued to perpetrate the years-long deception even after acknowledging that the Products were unfit for consumer use.

---

[13] Dentsply Sirona Provides Update on Byte Aligner Products, Oct. 24, 2024 (available at https://investor.dentsplysirona.com/news-releases/news-release-details/dentsply-sirona-provides-update-byte-aligner-products, last accessed: Apr. 16, 2026).

[14] Webcast of Dentply Sirona Conference Call on Byte Aligner Products, Oct. 25, 2024, at 00:03:44 (previously available at https://investor.dentsplysirona.com/events/event-details/dentsply-sirona-conference-call, last accessed: Apr. 13, 2025).

[15] *Id.*

37.     Once it was publicly revealed that, in fact, Byte's Products were neither safe nor effective for use by consumers, it was evident that the Products were valueless or at least not worth what Byte charged for them. Thus, on October 25, 2024, Byte posted on its website that it would suspend taking new orders.[16] Soon thereafter, Byte ceased taking new orders for the Products, was wound down as a business, and is no longer operational.

III.     **Plaintiff Paula J. Phillips Suffered Damages**

38.     On or about April 18, 2024, Plaintiff Paula J. Phillips saw an ad for the Product marketed by Defendant Dentsply.  That same day, she accessed www.Byte.com from South Florida. By accessing the Byte website, Ms. Phillips thereby accessed the statements and representations contained on the website. At that time, she ordered and paid $14.95 for an impression kit from Byte from the website. She made the impression and mailed it back to Byte.

39.     On or about May 2, 2024, Ms. Phillips again accessed the Byte website, where she again accessed the statements and representations contained on the website. At that time, she purchased the aligners from the Byte website for $2,499.00, several other related items to be used with the aligners, and a Byte "protection plan," for a total price of $3,338.02. She paid Byte using a Florida-based account and entered an installment contract with Byte to make the payments.

_____

[16] The October 2024 version of the message to consumers kept up the charade by insisting the Product was safe. It stated, "While we continue to believe the potential risk to patients remains low, we made the decision to voluntarily pause shipment and processing of new and recently placed orders for Byte Aligners and Impression Kits while we perform a more comprehensive review." Byte, Important Message for Patients, Oct. 25, 2024 (available at https://web.archive.org/web/20241031050907/https://www.byte.com/patient-message, last accessed April 16, 2026). This is in stark contrast to today's version of the message, which simply reads, "Byte has concluded its operations If you have any questions or need to request your Electronic Medical Records, please email inquiries@byte.com." (https://www.byte.com/patient-message, last accessed Apr. 16, 2026).

40. Ms. Phillips's installment contract called for the automatic debit of $139.08 on a monthly basis for 24 months starting May 2, 2024. The monthly debits commenced at that time and continued thereafter on a monthly basis in accordance with the installment contract's terms.

41. Ms. Phillips never entered any contract with Defendant Dentsply.

42. In or about late May 2024, Ms. Phillips received the aligners. After she started using the aligners, she began experiencing pain and bleeding in her mouth. The severity of the pain and bleeding worsened until Ms. Phillips stopped using the aligners.

43. Ms. Phillips inquired about a refund for her purchase of the Products; however, Byte's website advised that due to the nature of the product, no refunds are available. Thereafter, on or about February 12, 2025, Ms. Phillips learned that Byte had stopped selling the Products back in October 2024. She then contacted Byte to request a full refund of the purchase price. None was ever paid.

44. The deceptive practice described herein, in which Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. Ms. Phillips and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

## IV. CLASS ACTION ALLEGATIONS

45. Ms. Phillips brings this action on behalf of herself and all other similarly situated individuals pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, seeking damages pursuant to statutory law on behalf of the Class. Ms. Phillips also brings this action on behalf of herself and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking declaratory relief.

46. <u>Class Definition</u>: Ms. Phillips brings this action on behalf of herself and the Class defined as follows: All persons in Florida who purchased a Byte Aligner System and Impression Kit.

47. Excluded from the class are Defendant Dentsply, Byte, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

48. Ms. Phillips reserves the right to amend or otherwise alter the class definition at the appropriate time, or to propose subclasses, in response to facts learned from investigation or discovery or otherwise.

49. <u>Numerosity</u>: The proposed Class is so numerous that individual joinder of all members is impracticable. The exact number of Class members is not known at this time but can be determined based on the Products' sales records.

50. <u>Predominance of Common Questions</u>: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

a. Whether Defendant Dentsply engaged in the unlawful conduct alleged herein;

b. Whether Defendant Dentsply's statements were likely to mislead and deceive consumers acting reasonably in similar circumstances;

c. Whether Defendant Dentsply's statements were unlawful, false, deceptive, and/or misleading;

d. Whether Defendant Dentsply misled or deceived Plaintiff and Class members about the Products;

e. Whether Defendant Dentsply's actions violate state consumer protection laws;

f. Whether Plaintiff and Class members are entitled to declaratory relief;

g. Whether Defendant Dentsply's conduct economically injured Plaintiff and Class members (and in what amount); and

h. Whether Plaintiff and Class members are entitled to the recovery of punitive damages (and in what amount).

51. <u>Typicality</u>: Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant Dentsply's conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the class. Further, there are no defenses available to Defendant Dentsply that are unique to Plaintiff or to any particular Class members.

52. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

53. <u>Superiority of Class Action</u>: Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendant Dentsply's unlawful and wrongful conduct described herein. A class action is superior to other available remedies for the fair and efficient adjudication of the present controversy.

## <u>COUNT I – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT</u>
## <u>(On behalf of the Class)</u>

54. Plaintiff incorporates and realleges paragraphs 1 through 53 above as if fully set forth herein.

55. This is an action pursuant to Florida Statutes § 501.201, *et seq.*, otherwise known as the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

56. FDUTPA renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.204.

19

57. Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

58. Defendant Dentsply engaged in unfair, deceptive, and/or unconscionable acts or practices, by, among other things, doing the following:

    a. misrepresenting the level of doctor oversight concerning the Products;

    b. misrepresenting the effectiveness of the Products;

    c. misrepresenting the safety of the Products;

    d. failing to reasonably inform the public of adverse events associated with the Products; and

    e. failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

59. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

60. Through such unfair, unconscionable, and/or deceptive acts or practices, Defendant Dentsply caused damages to Plaintiff and the Class Members. The deceptive practice described herein, in which Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. Ms. Phillips and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

61. FDUTPA provides for declaratory relief. Fla. Stat. § 501.211. Plaintiff, on behalf of herself and the Class members, seeks a declaration that Defendant Dentsply's act or practice of marketing, and advertising the Products violate FDUTPA.

62. FDUTPA also provides for the recovery of actual damages, plus attorneys' fees and costs as provided in Fla. Stat. § 501.2105. Plaintiff, on behalf of herself and the Class members, seeks actual damages, attorney's fees and costs as provided by FDUTPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this case be certified and maintained as a class action and for judgment to be entered against Defendant Dentsply as follows:

a. certify the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

b. award all damages to which Plaintiff and Class members are entitled under applicable law;

c. enter declaratory relief to the effect that Defendant Dentsply's conduct is violative of FDUTPA;

d. award Plaintiff and the Class all attorneys' fees and costs allowable by law;

e. award Plaintiff and the Class any and all pre-judgment and post-judgment interest as allowed by law; and

f. grant such other and further relief this Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, on behalf of herself and the Class members, demands trial by jury of all issues so triable.

Respectfully submitted,

**LEE SEGUI, PLLC**
421 N. Harrington St., Suite 460
Raleigh, NC 27603
Tel.: 855-496-7500

By: */s/ Matthew E. Lee*
Matthew E. Lee, N.C. Bar No. 35405
mlee@leesegui.com
Jeremy R. Williams, N.C. Bar No. 48162
jwilliams@leesegui.com
Katharine W. Batchelor, N.C. Bar No. 58261
kbatchelor@leesegui.com

**LAW OFFICES OF JORDAN A. DRESNICK**
901 Brickell Key Blvd., Suite 2901
Miami, FL 33146
Tel.: 786-220-8785

Jordan A. Dresnick*
Fla. Bar No. 058529
jordandresnick@gmail.com

**GROSSMAN ROTH YAFFA COHEN, P.A.**
2525 Ponce de Leon Blvd., Suite 1150
Coral Gables, FL 33134
Tel.: 305-442-8666
Fax: 305-285-1668

Stuart Z. Grossman*
Fla. Bar No. 156113
szg@grossmanroth.com
Manuel A. "Alex" Arteaga-Gomez*
Fla. Bar. No. 18122
aag@grossmanroth.com
Ryan J. Yaffa*
Fla. Bar. No. 1026131
rjy@grossmanroth.com

*Attorneys for Plaintiff Paula J. Phillips*

*\*Pro Hac Vice Pending*

22