UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

Case No. 3:26-cv-00304

| | |
|---|---|
| PAULA J. PHILLIPS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DENTSPLY SIRONA INC.,<br><br>Defendant. | **DENTSPLY'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION** |

## TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

II. Plaintiff agreed to arbitrate any disputes regarding the Byte Products and waived class action claims. .......... 2

III. Plaintiff has filed three complaints in two cases bringing putative class actions despite her agreement to arbitrate any disputes related to the Byte Products. .......... 4

LEGAL STANDARD .......... 7

ARGUMENT .......... 8

I. The FAA requires arbitration or dismissal. .......... 8

A. The Consent's Arbitration Agreement covers Plaintiff's claim. .......... 9

B. The purchase of the Byte Products is a transaction evidencing interstate commerce. .......... 10

C. There is a dispute between the parties and a refusal by Plaintiff to arbitrate. .......... 11

II. Precedent forecloses Plaintiff's end-run around binding arbitration. .......... 12

A. Dentsply, as the parent company of Byte, may enforce the Arbitration Agreement. .......... 12

B. Equitable estoppel separately compels arbitration. .......... 14

i. Plaintiff allegations against Dentsply are dependent on Byte and arise from the same factual allegations as Plaintiff's previous claims against Byte. .......... 15

ii. Plaintiff's claim relies on and presumes the existence of the agreement between her and Byte. .......... 17

CONCLUSION .......... 18

CERTIFICATE OF SERVICE .......... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Bankers Ins. Grp. v. Long*,
453 F.3d 623 (4th Cir. 2006) ....................7

*Armas v. Prudential Sec.*,
842 So. 2d 210 (Fla. Dist. Ct. App. 2003) ....................16, 17, 18

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624, (2009) ....................14

*AT&T Mobility v. Concepcion*,
563 U.S. 333 (2011) ....................7

*Austin v. Experian Info.,*
*Sols.*, 148 F.4th 194 (4th Cir. 2025) ....................9

*Ayers v. Markiewicz*,
733 F. Supp. 3d 435 (E.D.N.C. 2024) ....................14

*Bartels by & through Bartels v. Saber Healthcare Grp.*,
880 F.3d 668 (4th Cir. 2018) ....................12

*Beard v. John Hiester Chevrolet*,
640 F. Supp. 3d 420 (E.D.N.C. 2022) ....................9

*Choice Hotels Int'l v. BSR Tropicana Resort*,
252 F.3d 707 (4th Cir. 2001) ....................7

*Citi Cars. v. Cox Enters.*,
No. 1:17-CV-22190, 2018 WL 1521770 (S.D. Fla. Jan. 22, 2018) ....................16

*Direct Techs. Int'l v. Maxum Indem.*,
418 F. Supp. 3d 112 (W.D.N.C. 2019) ....................14

*Englehart v. AmeriCredit Fin. Servs.*,
No. 8:24-CV-02741, 2025 WL 2616660 (D. Md. Sept. 10, 2025) ....................7

*Galloway v. Santander Consumer USA*,
819 F.3d 79 (4th Cir. 2016) ....................7, 11

*Gunson v. BMO Harris Bank, N.A.*,
43 F. Supp. 3d 1396 (S.D. Fla. 2014) ....................17

*Henry Schein v. Archer & White Sales*,
586 U.S. 63 (2019) ........................................ 10

*Hosseini v. Upstart Network*,
No. 19-CV-704, 2020 WL 573126 (E.D. Va. Feb. 5, 2020) ........................................ 9

*J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*,
863 F.2d 315 (4th Cir. 1988) ........................................ 12, 13, 14

*James v. Synovus Bank*,
No. CV TDC-19-1137, 2020 WL 1479115 (D. Md. Mar. 26, 2020) ........................................ 11

*Keena v. Groupon*,
192 F. Supp. 3d 630 (W.D.N.C. 2016) ........................................ 7

*Lamps Plus v. Varela*,
587 U.S. 176 (2019) ........................................ 8

*Lash & Goldberg v. Clarke*,
88 So.3d 426 (Fla. Dist. Ct. App. 2012) ........................................ 15, 16

*Long v. Silver*,
248 F.3d 309 (4th Cir. 2001) ........................................ 12

*Maxum Foundations v. Salus*,
779 F.2d 974 (4th Cir. 1985) ........................................ 11

*Moore v. A-Team Trappers*,
No. 23-CV-60441, 2023 WL 4846598 (S.D. Fla. July 28, 2023) ........................................ 15

*Oberlin Cap. v. Slavin*,
147 N.C. App. 52 (2001) ........................................ 16

*Phillips v. Dentsply Sirona*,
No. 1:25-CV-21074, 2026 WL 867714 (S.D. Fla. Mar. 30, 2026) ........................................ 6, 7

*Phillips v. Dentsply Sirona*,
No. 1:25-CV-21074, 2026 WL 871301 (S.D. Fla. Feb. 25, 2026) ........................................ 6

*Phillips v. Dentsply Sirona*,
No. 1:25-CV-21074, 2026 WL 951715 (S.D. Fla. Feb. 25, 2026) ........................................ 6

*Rota-McLarty v. Santander Consumer USA*,
700 F.3d 690 (4th Cir. 2012) ........................................ 11

*U.S. Sur. Co. v. Hanover R.S. Ltd. P'ship*,
543 F. Supp. 2d 492 (W.D.N.C. 2008) ....................10

*Valiente v. StockX*,
645 F. Supp. 3d 1331 (S.D. Fla. 2022) ....................9

*Zhu v. USAA Fed. Sav. Bank*,
No. 3:25-CV-01027, 2026 WL 1091598 (W.D.N.C. Apr. 22, 2026) ....................7

**Statutes**

9 U.S.C. § 1 ....................1, 4

9 U.S.C. § 4 ....................12

Pursuant to 9 U.S.C. § 1 *et seq.*, Defendant Dentsply Sirona, Inc. ("Dentsply") respectfully submits this brief in support of its motion to compel arbitration of Plaintiff Paula J. Phillip's claim.

## INTRODUCTION

Plaintiff alleges one violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") based on the marketing of Byte Aligner Systems and Impression Kits (the "Byte Products") sold by Straight Smile, LLC d/b/a Byte ("Byte"). Plaintiff originally sued Byte—the entity that sold and marketed the Byte Products—and its parent company, Dentsply, in the Southern District of Florida. Dentsply and Byte filed a motion to compel arbitration because Plaintiff had agreed to arbitrate any disputes regarding the Byte Products and waived class action rights. Then Plaintiff hastily dismissed Byte. The district court dismissed that complaint and now Plaintiff seeks to bring the same FDUTPA claim in this Court—against only Dentsply.

Plaintiff cannot evade arbitration with artful pleading. Plaintiff's own allegations concede that she entered into an agreement with Byte when she purchased the Byte Products. When she did so, she agreed to binding individual arbitration, with arbitrability questions delegated to the arbitrator. Plaintiff also agreed that any dispute would be determined on an individual basis, and not as a class, representative, or collective action. Plaintiff's claim, based on her contention that she overpaid for the Byte Products, falls squarely under the arbitration agreement.

This Court should uphold the Federal Arbitration Act and precedent foreclosing strategic pleading around arbitration clauses. Forcing a parent company to litigate in court the same issues that Plaintiff agreed to arbitrate would undermine the federal policy favoring arbitration. And this Court should not be the first to puncture a gaping hole in the Federal Arbitration Act.

Dentsply has asserted its rights to enforce the Arbitration Agreement and class action waiver. This Court is without authority to adjudicate Plaintiff's claim, much less a class action.

## BACKGROUND

### I. Plaintiff agreed to arbitrate any disputes regarding the Byte Products and waived class action claims.

Plaintiff, a practicing attorney, alleges that she "entered into an installment contract with Byte" when she purchased the Byte Products. ECF No. 1 ("Complaint") ¶ 39. Plaintiff further, correctly, alleges that "the only way a consumer can purchase [the Byte Products] is through Byte's website." *Id.* ¶ 17.

The terms of that website, and the process of purchasing the Byte Products through it, were laid out in detail in the last action, before Plaintiff dismissed Byte. Consumers cannot purchase the Byte Products without first purchasing an impression kit through the Byte website. Declaration of Marco Santini (attached as **Exhibit 1**) ¶ 3.

Plaintiff could not, and did not, purchase the impression kit without agreeing to the Company's Privacy Policy, Terms of Use, and Informed Consent before finalizing her order. Santini Decl. ¶¶ 4-9. She does not allege otherwise.

***Plaintiff agreed to arbitration, and waived her right to file a class action, through the Informed Consent provision*:** This transaction, required for Plaintiff to obtain the Byte Products, included the arbitration provision contained within the Informed Consent (the "Consent"). *Id.* In the Consent, Plaintiff agreed to arbitrate any dispute regarding the Byte Aligners in multiple, conspicuous provisions, including:

> I agree any dispute regarding the products and services offered by Byte...will be determined on an individual basis (and not as a class, representative, or collective action) by submission to arbitration pursuant to the attached Agreement to Arbitrate and Class Action Waiver, and not by a lawsuit led in any court, except individual claims within the jurisdiction of Small Claims Court.

Santini Decl., **Exhibit A**. Plaintiff further agreed:

> I hereby attest that I have read and agree with, and have taken time to consider the consequences of this important decision, the terms of Byte's Agreement to Arbitrate and Class Action Waiver that is attached hereto.

*Id.* The "Agreement to Arbitrate and Class Action Waiver" is contained within the Consent. It appears under a bolded and capitalized header that states: **AGREEMENT TO ARBITRATE AND CLASS ACTION WAIVER**. *Id.* (the "Arbitration Agreement"). Again, Plaintiff does not allege otherwise.

***The Consent unambiguously waived Plaintiff's ability to proceed in any Court*:** The Arbitration Agreement outlines, in detail, the process to initiate arbitration, rules to be applied, governing law, location of the arbitration, and procedures to be followed. *Id.* It states: "By agreeing to the Consent, you agree that you are required to resolve any claim that you may have against Byte, Straight Smile, LLC, or their affiliated dental professionals (collectively Byte et al.) ... on an individual basis in arbitration, as set forth in this Arbitration Agreement." *Id.*

It also states, under the bolded header "**Agreement to Binding Arbitration Between You and Byte et al.**":

> You and Byte et al. agree that any dispute, claim, or controversy arising out of or relating to (a) the Customer Consent or the existence, breach, termination, enforcement, interpretation, or validity thereof, or (b) your access to or use of the services and products you order and/or receive from Byte et al. at any time, whether before or after the date you agreed to the Consent, will be settled by binding arbitration between you and Byte et al. and not in a court of law.
>
> You acknowledge and agree that you and Byte et al. are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Unless both you and Byte et al. otherwise agree in writing, any arbitration will be conducted only on an individual basis and not in a class, collective, consolidated, or representative proceeding.

*Id.*

Plaintiff further agreed that "the arbitrator (Arbitrator), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable." *Id.*

And Plaintiff agreed to the terms that the "Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the terms of the Consent are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches or estoppel." *Id.* The parties further expressly agreed that the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et. seq., governs the interpretation, enforcement, and proceedings held pursuant to the Arbitration Agreement. *Id.*

Business records of Byte reflect that Plaintiff purchased an impression kit on April 18, 2024, and that it was delivered on April 20, 2024. Santini Decl., **Exhibit B.** Byte's records further show that Plaintiff purchased a set of Byte Aligners, which were delivered in May 2024. *Id.* Plaintiff could not have purchased the impression kit or Byte Aligners unless she agreed to the Consent. She does not allege otherwise.

## II. Plaintiff has filed three complaints in two cases bringing putative class actions despite her agreement to arbitrate any disputes related to the Byte Products.

Despite the clear language of the Arbitration Agreement in the Consent that Plaintiff entered when she purchased the Byte Products, Plaintiff has now filed ***three*** complaints in federal court attempting to bring putative class claims.

***First Florida Complaint*:** On March 7, 2025, Plaintiff filed her first proposed class action alleging seven claims against Dentsply and Byte, including violation of the FDUTPA. *See Phillips v. Straight Smile LLC, et. al*, No. 1:25-cv-21074, ECF No. 1 (S.D. Fla. Mar. 07, 2025) ("*Phillips I*"). In her first complaint, Plaintiff alleged that she viewed an unspecified advertisement and later entered a

contract with Byte to purchase the Byte Products to straighten her teeth. *Phillips I*, ECF No. 1 ("First Florida Complaint") ¶¶ 29-30. Plaintiff alleged that after using the Byte Products she began experiencing pain and therefore stopped using the products. *Id.* ¶ 32. Plaintiff further alleged that she inquired about a refund for the Byte Products but did not receive one. *Id.* ¶ 33. Plaintiff asserted her claim against Byte and Dentsply collectively, but notably, all Plaintiff's causes of action were based on the above allegations about *Byte*. *Id.* ¶¶ 42-93.

On April 3, 2025, Byte and Dentsply filed a petition to compel arbitration and to stay the Florida proceedings. *Phillips I*, ECF No. 8. That filing included the Arbitration Agreement and a declaration making clear that Plaintiff had necessarily entered into it and agreed to its terms as part of her purchase of the Byte Products. *Phillips I*, ECF No. 8-1 through ECF No. 8-4.

***Second Florida Complaint*:** Shortly afterwards, on April 16, 2025, Plaintiff dismissed Byte from the litigation and filed an amended complaint naming only Dentsply and asserting two claims: violation of FDUPTA and violation of the Florida Misleading Advertising Statute § 817.41. *Phillips I*, ECF No. 11 ("Second Florida Complaint"). The Second Florida Complaint set forth the same basic allegations that she suffered economic damage when she purchased products from Byte, experienced pain that caused her to stop using the Byte Products, and was thereafter denied a refund of the purchase price by Byte. *Id.* ¶¶ 26-30. The Second Florida Complaint also included allegations that Dentsply somehow mislead consumers by offering vague statements of corporate optimism regarding Byte and that this somehow caused harm to Plaintiff. *Id.* ¶¶ 8-20, 45, 54-55. On May 9, 2025, Dentsply filed a motion to dismiss and a motion to compel arbitration. *Phillips I*, ECF No. 19, 20.

***The Court dismissed the Second Florida Complaint*:** On February 25, 2026, the Magistrate Judge issued a report and recommendation recommending that *Phillips I* be dismissed with prejudice for lack of personal jurisdiction. *Phillips v. Dentsply Sirona*, No. 1:25-CV-21074, 2026 WL 871301, at

*9 (S.D. Fla. Feb. 25, 2026). The Magistrate Judge likewise recommended that Dentsply's motion to compel arbitration be denied as moot due to her recommendation of dismissal. *Phillips v. Dentsply Sirona*, No. 1:25-CV-21074, 2026 WL 951715, at *2 (S.D. Fla. Feb. 25, 2026). On March 30, 2026, the *Phillips I* Court dismissed Plaintiff's Second Florida Complaint due to a lack of personal jurisdiction over Dentsply in Florida. *Phillips v. Dentsply Sirona*, No. 1:25-CV-21074, 2026 WL 867714, at *1 (S.D. Fla. Mar. 30, 2026). The Court ordered that *if* Plaintiff refiled in another court, it had to be with 20 days of the order (by April 19, 2026).

***Plaintiff refiled in this Court, this time omitting Byte*:** Undeterred by the dismissal or her agreement to arbitrate any dispute over the Byte Products, Plaintiff filed the Complaint in this action on April 20, 2026. ECF No. 1. As with her prior efforts, the Complaint here contains the same core allegations that Plaintiff purchased Byte Products from and entered a contract with Byte, experienced pain that caused her to stop using the Byte Products, was denied a refund for the Byte Products, that Dentsply made certain statements of corporate optimism regarding Byte, and therefore that Dentsply somehow and caused her (and the proposed class members) harm. *Id.* at ¶¶ 38-44.

The only notable new allegations regarding Dentsply's alleged liability that are present in the current Complaint that were not included in the Second Florida Complaint are the following:

- That Dentsply placed a link to Byte's website on a January 4, 2021 press release (Compl. ¶ 11);
- That Dentsply published the January 4, 2021 press release on its website (*Id.* ¶ 12);
- That Dentsply used a January 4, 2021 social media post to direct viewers to Byte's website (*Id.* ¶ 15); and
- That Dentsply somehow demonstrated "an intent to adopt" certain statements on Byte's website and that these statements of Byte are, thus, "attributable to" Dentsply (*Id.* ¶¶ 24-25).

Like in the prior complaints, Plaintiff alleges nothing about her agreement to arbitrate and alleges no facts to alter the conclusion that her claim is fundamentally directed towards *Byte* and must be arbitrated.

## LEGAL STANDARD

The FAA applies to any arbitration provision "in a contract evidencing a transaction involving commerce." *Keena v. Groupon*, 192 F. Supp. 3d 630, 634 (W.D.N.C. 2016) (internal quotations omitted). The FAA evidences "a liberal federal policy favoring arbitration," and requires that arbitration agreements be enforced according to their terms. *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations omitted). "Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l v. BSR Tropicana Resort*, 252 F.3d 707, 710 (4th Cir. 2001). If a dispute is sent to arbitration, the Court can stay or dismiss the case. *Zhu v. USAA Fed. Sav. Bank*, No. 3:25-CV-01027, 2026 WL 1091598, at *1 (W.D.N.C. Apr. 22, 2026).

A party can compel arbitration under the FAA if it can demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." *Galloway v. Santander Consumer USA*, 819 F.3d 79, 84 (4th Cir. 2016) (internal quotations omitted). Selective pleading is not a basis to reject a valid arbitration agreement. *See Am. Bankers Ins. Grp. v. Long*, 453 F.3d 623, 630 (4th Cir. 2006); *Englehart v. AmeriCredit Fin. Servs.*, No. 8:24-CV-02741, 2025 WL 2616660, at *4 (D. Md. Sept. 10, 2025). And the Supreme Court has "repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus v. Varela*, 587 U.S. 176, 189 (2019).

## ARGUMENT

Here, there is no ambiguity. The FAA's four-part test on arbitrability compels this Court to direct the parties to arbitration or dismiss the case. And binding precedent prevents Plaintiff from avoiding arbitration by dropping Byte halfway through the first action and omitting Byte as a defendant here when she refiled.

### I. The FAA requires arbitration or dismissal.

The FAA requires Plaintiff to arbitrate this matter. All four elements of the FAA's test are satisfied. There is plainly a dispute between the parties (element one). And Plaintiff has failed, refused, and neglected to arbitrate that dispute (element four), as demonstrated by the history of this litigation and this motion to compel. *See infra* I.C.

The remaining two elements—a written arbitration provision covering the dispute and a transaction involving interstate commerce—are likewise met. Plaintiff alleges that she entered a contract with Byte to purchase the Byte Products. ECF No. 1 ¶ 39. The purchase process required her agreement to the Consent before she completed the transaction. Santini Decl. ¶¶ 3-9. Plaintiff does not allege otherwise.

That written agreement reaches disputes arising out of or relating to the Byte Products and Plaintiff's purchase (element two). *See infra* I.A. And the transaction involved interstate commerce (element three), by Plaintiff's own allegations: the claim involved online marketing and Plaintiff is a resident of Florida (who seeks to serve as the representative of a class of all purchasers of the Byte Products in Florida), while Dentsply is a Delaware corporation with a principal place of business in North Carolina. ECF No. 1 ¶¶ 3-4; *see infra* I.B. And Byte is a Delaware limited liability company with a principal place of business in California that was headquartered in California. Santini Decl. ¶ 1.

As a result, and as detailed below, the FAA governs and requires enforcement of the Arbitration Agreement according to its terms.

**A. The Consent's Arbitration Agreement covers Plaintiff's claim.**

The Consent contains a broad arbitration provision that reaches Plaintiff's claim. Plaintiff openly alleges that she contracted with Byte. ECF No. 1 ¶ 39. No transaction can be consummated until a consumer agrees to the Consent and the accompanying Arbitration Agreement. Thus, the delivery of the Byte Products at issue establishes that Plaintiff expressly accepted the terms of the Informed Consent and its arbitration provision. Santini Decl. ¶¶ 3-9.

By clicking on the box indicating that she agreed to the Consent, Plaintiff entered into a contract. *See e.g., Austin v. Experian Info. Sols.*, 148 F.4th 194, 206-07 (4th Cir. 2025) (enforcing clickwrap agreement that provided link to relevant terms); *Beard v. John Hiester Chevrolet*, 640 F. Supp. 3d 420, 430 (E.D.N.C. 2022) (holding that clickwrap agreement was enforceable contract where party was required to click "I agree" to various terms where there were "easily accessible links" to those terms "on the same page" that the party clicked to indicate agreement); *Valiente v. StockX*, 645 F. Supp. 3d 1331, 1338 (S.D. Fla. 2022) ("In Florida and the federal circuits click-wrap agreements are valid and enforceable contracts.") (citation modified). Such modified clickwrap agreements are "routinely found to be valid, enforceable contracts." *See e.g.*, *Hosseini v. Upstart Network*, No. 19-CV-704, 2020 WL 573126, at *4 (E.D. Va. Feb. 5, 2020) (upholding a modified clickwrap arbitration agreement); *Austin*, 148 F.4th at 206-07 (4th Cir. 2025); *Beard*, 640 F. Supp. 3d at 430 (E.D.N.C. 2022); *Valiente*, 645 F. Supp. 3d at 1338-39.

Here, Plaintiff agreed in the Consent "that any dispute, claim, or controversy arising out of or relating … [her] access to or use of the services and products" she ordered from Byte would be subject to arbitration. Courts unequivocally explain that the term "arising out of or relating to" carries a broad

scope with an "expansive reach." *U.S. Sur. Co. v. Hanover R.S. Ltd. P'ship*, 543 F. Supp. 2d 492, 495 (W.D.N.C. 2008) (internal quotations omitted). Plaintiff's Complaint meanwhile is replete with references to the marketing of the Byte Products (ECF No. 1 ¶ 15), purchase of the Byte Products by Plaintiff (*Id.* ¶ 39), and her use of the Byte Products (*Id.* ¶ 43). The Consent's arbitration clause covers Plaintiff's claim that she paid a price premium for the Byte Products and subjects that claim to arbitration.

And, to the extent that Plaintiff argues that her claim falls outside of the scope of the Arbitration Agreement, that would be a question to be resolved by the *arbitrator*. Santini Decl., Ex. A ("Arbitrator shall also be responsible for determining all threshold arbitrability issues"). Whether the underlying claim is arbitrable is no reason to deny the present motion. *Id.* (further noting that the arbitrator "shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement[.]"); *Henry Schein v. Archer & White Sales*, 586 U.S. 63, 65 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.").

### B. The purchase of the Byte Products is a transaction evidencing interstate commerce.

The purchase of the Byte Products involves interstate commerce.

Plaintiff alleges she is a Florida consumer (seeking to serve as the representative of a class of more Florida consumers) doing business with a Delaware subsidiary that was headquartered in California at the relevant times and its otherwise unrelated parent, a Delaware corporation headquartered in North Carolina. "[T]he term evidencing a transaction requires only that the transaction in fact involved interstate commerce." *Rota-McLarty v. Santander Consumer USA*, 700 F.3d 690, 697 (4th Cir. 2012) (internal quotation omitted). And no specific effect on interstate

commerce is required to be identified "so long as in the aggregate the economic activity in question would represent a general practice subject to federal control." *Id.* at 698 (citation modified).

The cross-border nature of sales between a non-Florida entities to a Florida resident, and Plaintiff's general allegations of online marketing, fit cleanly into the sphere of interstate commerce. And as the Fourth Circuit has explained, "[w]here … the party seeking arbitration alleges that the transaction is within the scope of the [FAA], and the party opposing application of the [FAA] does not come forward with evidence to rebut jurisdiction under the federal statute, we do not read into the [FAA] a requirement of further proof by the party invoking the federal law." *Maxum Foundations v. Salus*, 779 F.2d 974, 978 n.4 (4th Cir. 1985); *Rota-McLarty*, 700 F.3d 690, 697 (4th Cir. 2012) (citing *Maxum* for the same proposition).

**C. There is a dispute between the parties and a refusal by Plaintiff to arbitrate.**

The first and fourth elements of the FAA test are not subject to reasonable dispute.

Those elements are "(1) the existence of a dispute between the parties […] and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Galloway*, 819 F.3d at 84 (internal quotation omitted). Demonstrating these elements is a low threshold. The existence of a dispute is demonstrated by Plaintiff's claim against Dentsply. *James v. Synovus Bank*, No. CV TDC-19-1137, 2020 WL 1479115, at *2 (D. Md. Mar. 26, 2020). Likewise, a failure to arbitrate is demonstrated by this motion to compel arbitration and Plaintiff's ongoing failure to arbitrate. *Id.*

The Court should direct the parties to arbitration in accordance with the terms Plaintiff accepted when she purchased the Byte Products. Plaintiff entered into the Consent when she purchased the Byte Products. The Consent includes the Arbitration Agreement. That Arbitration Agreement covers Plaintiff's claims. Under Section 4 of the FAA, "the making of the agreement for

arbitration...is not in issue" and this Court is therefore required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *See* 9 U.S.C. § 4.

## II. Precedent forecloses Plaintiff's end-run around binding arbitration.

Plaintiff cannot escape arbitration by suing Dentsply alone. She is not the first to try this tactic. Precedent dictates that this effort must fail for two reasons.

First, when claims against a non-signatory parent and its signatory subsidiary arise from the same facts and are inherently inseparable, the parent may enforce the subsidiary's arbitration agreement. That principle applies here. Plaintiff's claim is based on the same purchase, the same alleged misconduct, and the same asserted injury she previously attributed to Byte in the Florida Actions.

Second, equitable estoppel independently allows Dentsply to enforce the Arbitration Agreement where, as here, Plaintiff has alleged concerted misconduct between Dentsply and Byte.

### A. Dentsply, as the parent company of Byte, may enforce the Arbitration Agreement.

Plaintiff's attempt to circumvent the Arbitration Agreement fails because Dentsply, as the parent company of Byte, is entitled to enforce that agreement.

"When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988). Courts have long followed this simple maxim based on "the federal policy in favor of arbitration" and it has been consistently reiterated by the Fourth Circuit. *Id.* at 321 (internal quotation omitted); *Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001); *Bartels by & through Bartels v. Saber Healthcare Grp.*, 880 F.3d 668, 679 (4th Cir. 2018).

This maxim is dispositive here. Plaintiff's allegations against Dentsply are virtually identical to the allegations she previously asserted against Byte in the Florida Complaints. Plaintiff initially sued both Dentsply and Byte alleging the *exact* same claims against both entities, including an FDUTPA claim. First Florida Compl. ¶¶ 42-93. She only attempted to distinguish her claims against Dentsply when she was presented with the Arbitration Agreement with Byte in the Florida Actions.

And the limited allegations regarding Dentsply that Plaintiff has added to this Complaint do not alter the conclusion that her claims against Dentsply are "inherently inseparable" from her claims against Byte. *J.J. Ryan*, 863 F.2d at 320. Plaintiff's current allegations—as they have all along—make this plain. ECF. No. 1 ¶¶ 2 ("Dentsply did not act alone"), 24 (alleging that "Byte is a separate entity from" Dentsply but that certain statements by Byte are "nevertheless attributable to Dentsply"), 25 (alleging that certain statements by Byte are "attributable to" Dentsply), 41 (alleging that Plaintiff "never entered any contract with" Dentsply), 44 (alleging that the conduct at issue "allowed *Byte* to charge a premium for the Products") (emphasis added), 60 (same).

At bottom, the theory of injury in the Complaint is based on the same core allegations as she raised in the Florida Complaints. Specifically, she alleges that: she purchased Byte Products from and entered a contract with Byte, she experienced pain that caused her to stop using the Byte Products, she was denied a refund for the Byte Products, Dentsply made certain statements of corporate optimism regarding Byte (that Plaintiff alleges were misleading), and therefore that Dentsply somehow and caused her (and the proposed class members) harm. The current Complaint, like the Second Florida Complaint, continues to make the same core factual allegations undergirding the same FDUTPA claim.

Under *J.J. Ryan* and its progeny, Plaintiff cannot avoid arbitration by simply removing Byte from the case caption while otherwise bringing the same claims she previously alleged. To allow Plaintiff to circumvent arbitration via artful pleading would elevate form over substance, "thwart[]"

the federal policy in favor of arbitration and render the agreement to arbitrate "meaningless." *J.J. Ryan*, 863 F.2d at 321.

When she purchased the Byte Product, Plaintiff agreed that any dispute regarding that product would be settled in individual arbitration. Santini Decl. ¶¶ 3-6. She does not, and cannot, allege otherwise. Plaintiff cannot renege on the Arbitration Agreement and use selective pleading to waste judicial resources. Dentsply is entitled to enforce the Arbitration Agreement and move this dispute to the forum to which Plaintiff agreed.

### B. Equitable estoppel separately compels arbitration.

Equitable estoppel also independently compels arbitration.

The FAA similarly allows for enforcement of state contract law principles that compel arbitration in favor of a third party, non-signatory. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, (2009) ("If a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law, the statute's terms are fulfilled."). Under Florida law, a non-signatory may enforce an arbitration agreement when either of two conditions is met:

> (1) the signatory plaintiff alleges claims against a non-signatory defendant that arise out of the same factual allegations as the claims against a signatory, *or*
>
> (2) the signatory plaintiff's claim refers to or presumes the existence of the underlying contract.[1]

---

[1] Florida law applies when interpreting the doctrine of equitable estoppel for the Arbitration Agreement. Arbitration agreements are interpreted under principles of state contract law although "due regard must be given to the federal policy favoring arbitration." *Ayers v. Markiewicz*, 733 F. Supp. 3d 435, 441 (E.D.N.C. 2024) (internal quotations omitted). North Carolina follows the *lex loci contractus* doctrine, which provides that the place where the contract was formed governs. *Direct Techs. Int'l v. Maxum Indem.*, 418 F. Supp. 3d 112, 117 (W.D.N.C. 2019). The Consent, as described above, was finalized when Plaintiff indicated her agreement via Byte's website. ECF No. 1 ¶ 38. Florida law thus applies.

Both apply here. And each independently compels arbitration. Plaintiff cannot get another bite at Dentsply by selectively omitting Byte.

**i. Plaintiff allegations against Dentsply are dependent on Byte and arise from the same factual allegations as Plaintiff's previous claims against Byte.**

Plaintiff's Complaint seeks to attribute statements made by *Byte* to Dentsply by alleging vaguely that Dentsply took certain actions demonstrating an attempt to adopt Byte's statements. And, in her prior pleadings, Plaintiff treated Byte and Dentsply as collectively responsible for the same alleged injury. With this framing, and with the nature of her injury turning on her purchase of a product that she purchased from Byte alone, Plaintiff now cannot rely on Byte's role in the transaction while disavowing the Arbitration Agreement with Byte.

Florida law recognizes that a non-signatory may compel arbitration under the doctrine of equitable estoppel where the signatory alleges "substantially interdependent and concerted misconduct" by the non-signatory and a signatory. *Lash & Goldberg v. Clarke*, 88 So.3d 426, 427-28 (Fla. Dist. Ct. App. 2012). In assessing whether equitable estoppel allows a non-signatory to invoke an arbitration agreement "[c]ourts must look to whether the plaintiff's claims against the signatory and non-signatory both arise out of the same factual allegations[.]" *Moore v. A-Team Trappers*, No. 23-CV-60441, 2023 WL 4846598, at *3 (S.D. Fla. July 28, 2023).

Plaintiff's theory of liability fundamentally flows through Byte—the entity that sold and marketed the products at issue. She cannot invoke that theory while avoiding the Consent and the Arbitration Agreement. Indeed, the Complaint alleges that "*Dentsply did not act alone*" and explains that Byte "also marketed the Products[.]" ECF No. 1¶ 2 (emphasis added). The Complaint goes on to refer to a press release in which Dentsply and Byte logos appeared (*id.* ¶ 10), a social media post by Dentsply that linked to Byte's website (*id.* ¶ 15), and even Byte's own website which

includes Dentsply's logo. *Id.* ¶ 19. Plaintiff makes these allegations in an effort to support her assertion that Dentsply adopted Byte's statements about the Byte Products that Dentsply is therefore somehow liable for harm following the purchase of those products. *Id.* ¶ 25. But Plaintiff cannot hold Dentsply liable for harm she alleges follows from her purchase of the Byte Products while ignoring Arbitration Agreement that she entered as part of that purchase. *Armas v. Prudential Sec.*, 842 So. 2d 210, 212 (Fla. Dist. Ct. App. 2003) ("Prudential's claims against Dole arise out of the same factual allegations of concerted conduct by both the non-signatory, Dole and the signatories, SMJ and Garcia and equitable estoppel is warranted.")

Plaintiff's prior pleadings reinforce that there is no daylight between her claims against Dentsply and her claims against Byte. In her first complaint in *Phillips I*, Plaintiff adopted a collective style of pleading that levied virtually all her allegations against Dentsply and Byte collectively as "Defendants." First Compl. at ¶¶ 11-22. Such collective pleading treats Dentsply and Byte as the same actor and necessarily alleges interdependent conduct. *Cf. Oberlin Cap. v. Slavin*, 147 N.C. App. 52, 57 (2001). When a complaint, like the one in *Phillips I*, ties "defendants to the others who were parties to the arbitration agreement" the invocation of equitable estoppel is proper. *Lash*, 88 So. 3d at 428; *Citi Cars. v. Cox Enters.*, No. 1:17-CV-22190, 2018 WL 1521770, at *11 (S.D. Fla. Jan. 22, 2018) (noting that collectively pled claims against multiple defendants alleged claims that arose "out of the same factual allegations of concerted conduct by both" and warranted equitable estoppel).

Given that her claim necessarily involves Byte, Plaintiff cannot avoid the Arbitration Agreement simply by dropping Byte as a party and adding limited and vague allegations that Dentsply somehow adopted the statements by Byte. *See supra* Background, II.

### ii. Plaintiff's claim relies on and presumes the existence of the agreement between her and Byte.

Plaintiff's claim must be arbitrated for the independent reason that it is fully grounded in and dependent on her agreement to purchase the Byte Products from Byte. Despite dressing her claim in statutory language, Plaintiff merely seeks to recover the purchase price that she paid to Byte (which she alleges Dentsply somehow allowed Byte to inflate) and therefore relies substantially on her agreement with Byte.

Equitable estoppel also "applies when the signatory to the contract relies on the terms of the contract to assert his or her claims against the non-signatory." *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1401 (S.D. Fla. 2014). In other words, when a "signatory's claims against a non-signatory make reference to or presume the existence of a written agreement" equitable estoppel is proper. *Armas*, 842 So. 2d at 212.

Plaintiff's theory of damages is firmly based on the agreement between Plaintiff and Byte. She seeks to recover her "actual damages" (ECF No. 1 ¶ 62) which, although not defined, must mean that she is seeking to recover some or all of the purchase price that she paid to Byte. Indeed, under the header "**Plaintiff Paula J. Phillips Suffered Damages**," Plaintiff alleges that she entered a contract with Byte to purchase a set of clear aligners and related products. *Id.* ¶ 39. She entered this contract by accessing Byte's website (*Id.* 38), receiving an impression kit from Byte which she mailed back (*Id.*), and there after entering "an installment contract with Byte to make the payments" for the products. *Id.* ¶ 39. When Plaintiff decided she was unhappy with the Byte Products she "inquired about a refund" for the Byte Products. *Id.* ¶ 43. Plaintiff in fact contacted Byte a second time seeking a "full refund" when she learned the Byte Products were no longer being sold. *Id.*

Thus, the "actual damages" to which Plaintiff believes she is entitled to, what she paid Byte, is inherently tied to her agreement with Byte, including the Consent. She does not allege otherwise.

Plaintiff's definition of the putative class only confirms her claim's reliance on a contract with Byte. Plaintiff defines the class as "All persons in Florida who purchased a Byte Aligner System and Impression kit." *Id.* ¶ 46. And Plaintiff admits that the only way a consumer can purchase the Byte Products is via Byte's website. *Id.* ¶ 17. Such a purchase in turn includes the accompanying Consent and Arbitration Agreement. Santini Decl. ¶¶ 3-6. Plaintiff should be estopped from arguing that the FDUPTA claim is not arbitrable when the entire claim references, depends on, and is related to, the existence of the agreement with Byte. *Armas*, 842 So. 2d at 212.

Because Plaintiff's claim both rests on alleged concerted misconduct by Dentsply and Byte and relies on her agreement with Byte, equitable estoppel permits Dentsply to enforce the arbitration provision of the Consent.

## **CONCLUSION**

Plaintiff agreed that all disputes regarding the Byte Products would be subject to arbitration when she purchased the Byte Products. She cannot now turn her back on that agreement because she finds it inconvenient. This Court should enforce the FAA and dismiss this action or order it to arbitration.

This the 12th day of June, 2026.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.


*/s/ H. Hunter Bruton*
H. Hunter Bruton (N.C. Bar No. 50601)
David A. Pasley (N.C. Bar No. 52332)
Daniel T. Harrell (N.C. Bar No. 64696)
P.O. Box 2611
Raleigh, NC 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
hbruton@smithlaw.com
dpasley@smithlaw.com
dharrell@smithlaw.com
*Counsel for Dentsply Sirona Inc.*

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record and pro se parties who have consented to electronic service.

This the 12th day of June, 2026.

*/s/ H. Hunter Bruton*
H. Hunter Bruton