**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CASE NO. 3:26-CV-00304**

PAULA J. PHILLIPS, DAVID BRUCK, LAURA DUKE, CHRISTOPHER ANALISTA, CHEYANNE SEAY, HEATHER MCCARTHY, WILLIAM CRAGUN II, ANDRIANA BROWN, JAMIE RICKS, JADE ERPELDING, TIANNA BARBOZA, CARESHA BURREL, SCOTT HELLER, ABBY LONG, JACQUELINE AHLERS, AMANDA ABRAHAMOWICZ, ELIZAVETA LAPSHINA, CHRISTINE BUKOWSKI, and KATHERINE GERDES, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

DENTSPLY SIRONA INC.,

Defendant.
_______________________________________/

**FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ........ 1
PARTIES ........ 1
JURISDICTION AND VENUE ........ 4
FACTUAL ALLEGATIONS ........ 5
I. Defendant Dentsply Engaged in Misleading and Deceptive Sales Practices ........ 5
A. Defendant Dentsply's False and Misleading Statements ........ 5
B. The Falsity of Defendant Dentsply's Promotional Statements ........ 14
II. Defendant Dentsply Publicly Admits to the Products' Flaws ........ 16
III. The Plaintiffs Suffered Damages ........ 18
A. Florida Plaintiffs ........ 18
B. Alabama Plaintiff ........ 21
C. California Plaintiffs ........ 22
D. Hawaii Plaintiff ........ 24
E. Illinois Plaintiffs ........ 25
F. Kansas Plaintiff ........ 27
G. Massachusetts Plaintiffs ........ 28
H. Michigan Plaintiff ........ 30
I. Minnesota Plaintiff ........ 31
J. New Jersey Plaintiffs ........ 32
K. New York Plaintiffs ........ 34
IV. Class Action Allegations ........ 36
CAUSES OF ACTION ........ 39
COUNT I - VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ........ 39
COUNT II - VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT ........ 41
COUNT III - VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW 43
COUNT IV - VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT ........ 45
COUNT V - VIOLATION OF HAWAII'S UNFAIR AND DECEPTIVE ACTS AND PRACTICES STATUTE ........ 48
COUNT VI - VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ........ 50
COUNT VII - VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT ... 52
COUNT VIII - VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 93A ........ 54

COUNT IX - VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT........................................................................................56
COUNT X - VIOLATION OF MINNESOTA'S CONSUMER FRAUD STATUTE..... 58
COUNT XI - VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT ................ 59
COUNT XII - VIOLATION OF NEW YORK GENERAL BUSINESS LAW............... 61
PRAYER FOR RELIEF ........................................................................................ 63
JURY TRIAL DEMAND ........................................................................................ 64

Plaintiffs PAULA J. PHILLIPS, DAVID BRUCK, LAURA DUKE, CHRISTOPHER ANALISTA, CHEYANNE SEAY, HEATHER MCCARTHY, WILLIAM CRAGUN II, ANDRIANA BROWN, JAMIE RICKS, JADE ERPELDING, TIANNA BARBOZA, CARESHA BURREL, SCOTT HELLER, ABBY LONG, JACQUELINE AHLERS, AMANDA ABRAHAMOWICZ, ELIZAVETA LAPSHINA, CHRISTINE BUKOWSKI, and KATHERINE GERDES, individually and on behalf of others similarly situated, file this class action complaint against Defendant DENTSPLY SIRONA INC. (hereinafter "Defendant Dentsply"), and allege as follows:

## INTRODUCTION

1. This is a class action complaint alleging violations of the consumer protection statutes of multiple states. It concerns Defendant Dentsply's deceptive marketing of Byte Aligner Systems and Impression Kits (hereinafter the "Products").

2. To be sure, Defendant Dentsply did not act alone. Customers contracted to purchase the Products from Defendant Dentsply's wholly owned subsidiary Straight Smile, LLC, d/b/a Byte ("Byte"). Byte also marketed the Products. However, Defendant Dentsply itself promoted the Products as safe and effective in fixing crooked teeth and malformed smiles, when in truth, the Products were ineffective and dangerous. This is evidenced by thousands of reported adverse events and Byte's abrupt cessation of sales in the fall of 2024. Importantly, Defendant Dentsply has independent statutory liability for its conduct in furthering this false and deceptive business practice to the detriment of consumers.

## PARTIES

3. Below is a chart summarizing all Plaintiffs in this action:

| Plaintiff | State of Purchase |
|---|---|
| Paula J. Phillips | Florida |
| David Bruck | Florida |
| Laura Duke | Florida |
| Christopher Analista | Alabama |
| Cheyanne Seay | California |
| Heather McCarthy | California |
| William Cragun II | Hawaii |
| Andriana Brown | Illinois |
| Jamie Ricks | Illinois |
| Jade Erpelding | Kansas |
| Tianna Barboza | Massachusetts |
| Caresha Burrell | Massachusetts |
| Scott Heller | Massachusetts |
| Abby Long | Michigan |
| Jacqueline Ahlers | Minnesota |
| Amanda Abrahamowicz | New Jersey |
| Elizaveta Lapshina | New Jersey |
| Christine Bukowski | New York |
| Katherine Gerdes | New York |

4. Plaintiff Paula J. Phillips is a resident of the State of Florida, and she was a Florida resident at the time she purchased and used the Products.

5. Plaintiff David Bruck is a resident of the State of Florida, and he was a Florida resident at the time he purchased and used the Products.

6. Plaintiff Laura Duke is a resident of the State of Florida, and she was a Florida resident at the time she purchased and used the Products.

7. Plaintiff Christopher Analista is a resident of the State of Alabama, and he was an Alabama resident at the time he purchased and used the Products.

8. Plaintiff Cheyanne Seay is a resident of the State of Texas, but she was a California resident at the time she purchased and used the Products.

9. Plaintiff Heather McCarthy is a resident of the State of California, and she was a

California resident at the time she purchased and used the Products.

10. Plaintiff William Cragun II is a resident of the State of Hawaii, and he was a Hawaii resident at the time he purchased and used the Products.

11. Plaintiff Andriana Brown is a resident of the State of Illinois, and she was an Illinois resident at the time she purchased and used the Products.

12. Plaintiff Jamie Ricks is a resident of the State of Illinois, and she was an Illinois resident at the time she purchased and used the Products.

13. Plaintiff Jade Erpelding is a resident of the State of Kansas, and she was a Kansas resident at the time she purchased and used the Products.

14. Plaintiff Tianna Barboza is a resident of the State of Massachusetts, and she was a Massachusetts resident at the time she purchased and used the Products.

15. Plaintiff Caresha Burrell is a resident of the State of Massachusetts, and she was a Massachusetts resident at the time she purchased and used the Products.

16. Plaintiff Scott Heller is a resident of the State of Massachusetts, and he was a Massachusetts resident at the time he purchased and used the Products.

17. Plaintiff Abby Long is a resident of the State of Michigan, and she was a Michigan resident at the time she purchased and used the Products.

18. Plaintiff Jacqueline Ahlers is a resident of the State of Minnesota, and she was a Minnesota resident at the time she purchased and used the Products.

19. Plaintiff Amanda Abrahamowicz is a resident of the State of New Jersey, and she was a New Jersey resident at the time she purchased and used the Products.

20. Plaintiff Elizaveta Lapshina is a resident of the State of New Jersey, and she was a New Jersey resident at the time she purchased and used the Products.

21. Plaintiff Christine Bukowski is a resident of the State of New York, and she was a New York resident at the time she purchased and used the Products.

22. Plaintiff Katherine Gerdes is a resident of the State of New York, and she was a New York resident at the time she purchased and used the Products.

23. Defendant Dentsply Sirona Inc. is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

## JURISDICTION AND VENUE

24. This Court has original jurisdiction over all causes of action asserted herein under 28 U.S.C. § 1332(d) because: (a) one or more Class members are citizens of a state that is different from the citizenship of Defendant Dentsply; (b) the number of members of the putative class is more than 100; (c) the amount in controversy in the aggregate for the putative class exceeds the sum of $5 million, exclusive of interest and costs; and (d) the primary Defendant does not include States, State officials, and/or other governmental entities against whom the Court may be foreclosed from ordering relief.

25. This Court also has original jurisdiction under 28 U.S.C. § 1332(a) because there is diversity of citizenship between each of the above-named Plaintiffs and Defendant Dentsply, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

26. This Court has personal jurisdiction over Defendant Dentsply pursuant to N.C.G.S.A. § 1-75-4(1)(d) because Defendant Dentsply's principal place of business is in Charlotte, North Carolina, and therefore, it is "engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." Additionally, given Defendant Dentsply's presence in Charlotte, North Carolina, this Court may exercise jurisdiction over Defendant Dentsply consistent with the Fourteenth Amendment's Due Process Clause.

27. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Venue is also proper under 28 U.S.C. § 1391(d) because Defendant Dentsply is subject to personal jurisdiction in this District in accordance with the terms of that provision.

## FACTUAL ALLEGATIONS

### I. Defendant Dentsply Engaged in Misleading and Deceptive Sales Practices

#### A. Defendant Dentsply's False and Misleading Statements

28. On or about December 31, 2020, Defendant Dentsply entered an all-cash transaction to purchase 100% of Byte for $1.04 billion. In a January 4, 2021, press release published by Defendant Dentsply announcing the purchase, Defendant Dentsply described Byte as a "leading direct-to-consumer, doctor-directed clear aligner company" and heralded Byte as boasting "a leadership position in the rapidly growing direct-to-consumer, doctor-directed clear aligner market."[1] Defendant Dentsply added, "Byte was founded on the commitment to improve access and affordability to orthodontic care…[by offering] effective treatment planning and an easy-to-use clear aligner solution delivered directly to a consumer's home."[2]

29. Moreover, in the same press release, Defendant Dentsply made several statements vouching for and touting the Products. Defendant Dentsply represented that it would contribute research, development, and ***commercial expertise, and it emphasized the alleged involvement of dental professionals with respect to the Products. It stated, Defendant "Dentsply Sirona's R&D capabilities and commercial expertise offer significant potential to drive additional growth of***

---

[1] Dentsply Press Release, Jan. 4, 2021 (available at https://news.dentsplysirona.com/content/dam/newsroom/corporate/en/Dentsply%20Sirona_PR_Dentsply%20Sirona%20acquires%20Byte_20210104.pdf, last accessed Sept. 25, 2026).
[2] *Id.*

***Byte clear aligner solutions.*** The combination with ***Dentsply will focus on expanding the market for orthodontic care by connecting additional patients with dental professionals and helping them access quality oral health care.***" (Emphasis added).[3]

30. The press release bears the logos of both Defendant Dentsply and Byte side-by-side, together with photos of their respective CEOs at the time:[4]

*Fig. 1: Dentsply Sirona is the world's largest manufacturer of professional dental products and technologies.*

*Fig. 2: Byte® holds a leadership position in the rapidly growing direct-to-consumer, doctor-directed clear aligner market.*



*Fig. 3: Don Casey, Chief Executive Officer at Dentsply Sirona*



*Fig. 4: Neeraj Gunsagar, CEO of Byte*

31. In addition to promoting Byte and the Products, Defendant Dentsply used the press release to direct consumers to the Byte website to purchase the Products. In the press release, immediately following a series of promotional statements regarding Byte and the Products, Defendant Dentsply included a link to Byte's website for readers to purchase the Products:[5]

[3] *Id*.
[4] *Id*.
[5] *Id*.

**About Byte**
Byte's doctor-directed clear aligner system provides customers' nationwide access to at-home invisible aligners for a straighter, whiter smile. With a growing team of over 450 employees and headquartered in Los Angeles, Byte's nationwide network of licensed dentists and orthodontists prescribe and oversee every customer's treatment plan, delivering a top-rated consumer experience and results in up to half the time and cost of traditional methods. At under $85 per month, Byte has found a way to make the inaccessible, accessible — providing an easy, convenient and affordable way to upgrade your smile through the Byte Teledentistry platform. For more information on Byte, visit: www.byteme.com.

32. On January 4, 2021, Defendant Dentsply published the press release on its publicly available website, where it has remained continuously publicly available from that date through the present date. It also disseminated the press release widely to media outlets in order to ensure that it reached as much of the consumer market for dental aligners as possible.

33. Further touting the involvement of dental professionals, also on January 4, 2021, Defendant Dentsply posted on Instagram that the Byte acquisition meant it would ***"strengthen our strong connection to dental professionals*** and meet the needs of people around the world by providing them an opportunity to improve their smiles." (Emphasis supplied). The posting includes a photograph of a young female happily fitting a Byte Aligner in her mouth:




34. Defendant Dentsply's Instagram post has remained continuously publicly available from the time of its online posting on January 4, 2021, through the present date.

35. As in the case of its January 4, 2021, press release, Defendant Dentsply used the Instagram post to direct consumers to the Byte website to purchase the Products. Defendant Dentsply included in the Instagram post an active link whereby viewers can easily click and be directed to Byte's website in order to purchase the Products.

36. For its part, Byte's business model was premised on mailing directly to consumers an impression kit to enable a consumer to make a mold of his or her teeth at home. Customers then

mail these impressions back to Byte for analysis, which Byte then uses to develop a treatment plan and deliver several sets of clear aligners directly to consumers. The aligners are supposed to fit in the customer's mouth to shift that customer's teeth towards the desired outcome. But unlike more traditional teeth aligners (e.g., Invisalign or Defendant Dentsply's own SureSmile), there is no in-person assessment by a dentist or orthodontist. Byte contracts to sell the Products to consumers without a dentist or orthodontist ever seeing or speaking to the consumer.

37. The only way a consumer can purchase Byte's impression kits and aligners is through Byte's website. This is the same website that Defendant Dentsply directed consumers to by way of its January 4, 2021, press release and Instagram posting.

38. Due to its relatively low cost as compared to traditional teeth aligners, Defendant Dentsply knowingly targeted the Products to low-income consumers. For example, during an October 25, 2024, publicly available conference call held by Defendant Dentsply, its CEO Simon Campeon stated that, "we think that the aligners and teledentistry are, are necessary for … to connect the underserved patient populations that may not be able to access it…."[6] And Defendant Dentsply's above-captioned Instagram post's reference to "providing" people "around the world" with an "opportunity to improve their smiles" is clearly intended to emphasize the Products' affordability.

39. Although the Products do not involve direct dentist/patient contact, Defendant Dentsply nevertheless represented to consumers that dental professionals signed off on the Products. This was intended to assure consumers that the Products were safe and effective

---

[6] Webcast of Dentsply Sirona Conference Call on Byte Aligner Products, Oct. 25, 2024, at 00:19:44 (previously available at https://investor.dentsplysirona.com/events/event-details/dentsply-sirona-conference-call, last accessed Apr. 13, 2025).

notwithstanding the lack of an in-person dental examination. Consistent with Defendant Dentsply's January 2021 press release, Byte's website claims, "we work with a ***nationwide network of licensed orthodontists and dentists who prescribe every treatment plan*** of our invisible aligners to deliver professional results." (Emphasis supplied). Importantly, this statement appears next to Defendant Dentsply's logo and name as shown below, which communicates that Defendant Dentsply vouches for the statements:[7]




40. The above-captioned text alongside Defendant Dentsply's logo and name appeared on the Byte website at least as early as July 31, 2024. Discovery may reveal that it first appeared on the website before that date. It remained continuously publicly available on the Byte website from its first publication through at least April 13, 2025.

41. Additionally, Byte's website represented that the Products were "backed" by

---

[7] Byte, About Us as of July 31, 2024 (available at https://web.archive.org/web/20240731125307/https://www.byte.com/pages/about-us, last accessed April 16, 2026).

Defendant Dentsply: "***Backed by Defendant Dentsply Sirona, the world's largest manufacturer of professional dental products,*** we're making it easier for everyone to get the smile of their dreams – and gain the confidence they deserve:"[8]




(Emphasis supplied). This appeared on the homepage of Byte's website, i.e., the page that one first sees upon initially visiting the website.

42. The above-captioned statement containing Defendant Dentsply's name appeared on the homepage of Byte's website at least as early as December 13, 2023. Discovery may reveal that it first appeared on the website before that date. It remained continuously publicly available on the Byte website from its first publication through at least April 13, 2025.

43. As noted above, the only way a consumer can purchase Byte's impression kits and

[8] Snapshot of Byte Homepage as of December 13, 2023 (available at https://web.archive.org/web/20231213174533/https://www.byte.com/, last accessed April 16, 2026).

aligners is through Byte's website. As such, any consumer who purchases the Products accesses the website and the statements published on the website, including the above-captioned statements on Byte's website.

44. Although the above-captioned statements are on Byte's website and Byte is a separate entity from Defendant Dentsply, they are nevertheless attributable to Defendant Dentsply and render Defendant Dentsply liable. This is evidenced by Defendant Dentsply's conduct demonstrating an intent to adopt those statements as its own. This includes the following:

(a) Defendant Dentsply intentionally promoted Byte and the Products, including but not limited to, through its January 4, 2021, press release and Instagram post.

(b) Defendant Dentsply directed consumers to Byte's website to purchase Byte's Products, as evidenced by the links included in its January 4, 2021, press release and Instagram post.

(c) Defendant Dentsply did not object to the inclusion of its name and logo together with the above-captioned statements on the Byte website, as evidenced by the fact that Defendant Dentsply's name and logo appeared with these statements on the website for many months, and even well after Byte ceased taking new orders in October 2024.

and

(d) Defendant Dentsply was directly engaged in an overall effort and promotional campaign to target consumers for the specific purpose of directing them to the Byte website to purchase the Products. Its leadership has admitted as much in public statements throughout the years. For example, in a September 15, 2021, investor conference, Defendant Dentsply's former CFO Jorge M. Gomez said Defendant Dentsply was rigorously targeting Byte sales to appropriate patient candidates while "directing traffic of complicated cases that cannot be handled by Byte"

elsewhere.[9] And during an analyst call on March 29, 2022, Defendant Dentsply's former CEO Donald Casey Jr. noted his intimate knowledge of Byte sales data:

> The nice thing about Byte, literally at the end of every day I see what they did. I mean I can tell you, week-by-week, day-by-day how many aligner trials did we sell, how many what we call S1s, how many people who we sent molds to, how many actually converted into Byte?[10]

Also, during Defendant Dentsply's May 3, 2023, earnings call, a Dentsply executive explained how Defendant Dentsply was "really looking at the quality of the funnel and how we're targeting customers" for Byte aligners.[11]

45. Through the above-described conduct and other conduct that will be developed in discovery, Defendant Dentsply adopted and vouched for the above-described statements on Byte's website, and so those statements are attributable to Defendant Dentsply.

46. Defendant Dentsply made similar representations about the involvement of dental professionals with the Products in public securities filings. For example, in its FY 2021 and FY 2022 annual reports on SEC Form 10-K, Defendant Dentsply represented that, ***"Byte contracts with an expansive nationwide network of independent licensed dentists and orthodontists*** for the

---

[9] Amended Complaint, D.E. 51, ¶ 69, *In re Dentsply Sirona, Inc. Securities Litigation*, No. 24-cv-9083 (E.D.N.Y. May 9, 2025). This is a pending federal securities class action against Defendant Dentsply on behalf of its shareholders, also arising out of Defendant Dentsply's false public statements about Byte. It includes quotes and summaries of documents and witness accounts. (*Id.* ¶¶ 66-89, 132-134, 160-172, 353). It is backed by sworn declarations from the plaintiffs. (D.E. 51-1, 51-2, No. 24-cv-9083, E.D.N.Y. May 9, 2025). On January 16, 2026, the court presiding over the securities fraud case entered a detailed 67-page order granting in part and denying part motions to dismiss, which left the claims and allegations of fraud against Defendant Dentsply largely intact. As found by the court, the securities fraud victims sufficiently pled that Defendant Dentsply and certain corporate executives "made false or misleading statements, with scienter, regarding (i) doctor-directed and overseen care, (ii) Byte's screening processes and 'conversion rate,' (iii) FDA reporting, and (iv) 'organic' growth." D.E. 90 at 66.

[10] *Id.* ¶ 87.

[11] *Id.* ¶ 71

provision of clinical services, including the oversight and control of each customer's clinical treatment in order to comply with these regulations and ensure that the business does not violate rules pertaining to the corporate practice of dentistry." (Emphasis supplied).[12] The FY 2021 10-K was published on March 1, 2022, and the FY 2022 10-K was published on March 1, 2023.[13]

47. By and through these and other similar statements, Defendant Dentsply represented to the public and consumers that the Products were safe and effective for the treatment of misaligned teeth and that consumers' use of the Products were overseen and directed by a network of qualified dental professionals.

48. Defendant Dentsply's representations regarding the Products carry particularly heavy weight given the role that Defendant Dentsply uniquely occupies in the market for dental supplies. Formed by the 2016 merger of Defendant Dentsply International and Sirona Dental Systems, Defendant Dentsply is the world's largest manufacturer of professional dental products and technologies. It is a publicly traded company that employs more than 650 engineers and scientists and approximately 15,000 people with operations in more than 40 countries worldwide, has a sales presence in more than 120 countries and boasts billions in revenue annually.

### B. The Falsity of Defendant Dentsply's Promotional Statements

49. Defendant Dentsply's representations regarding the Products, however, were false, deceptive, and misleading. Among other things, the Products were not sufficiently overseen,

---

[12] FY 2021 & FY 2022 Form 10K, Dentsply Sirona Inc. (available at https://investor.dentsplysirona.com/static-files/d965cdcd-377b-4ffa-a0e4-4c5be486b483 & https://investor.dentsplysirona.com/static-files/3af02d8d-f2ba-4d60-99ad-7bc55193f2b6, last accessed Feb. 24, 2025).

[13] Defendant Dentsply's Form 10-K's filed with SEC, available at https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0000818479&type=10-K&dateb=&owner=include&count=40&search_text= (last accessed Mar. 4, 2026).

reviewed, or directed by dental professionals. According to the FDA's publicly available Manufacturer and User Facility Device Experience (hereinafter "MAUDE") database, from January 1, 2021, to October 31, 2024, there were over 2,500 reported incidents involving adverse events associated with the Products. These incidents involved a broad range of complications suffered by customers, including the following:

(a) Allergic reactions

(b) Bite misalignment

(c) Bone loss

(d) Breaking and chipping of teeth

(e) Choking on aligners due to poor fit

(f) Cutting of gums due to aligners' sharp edges

(g) Facial swelling and abscess in mouth

(h) Gum recession and flaring of teeth

(i) Jaw clicking

(j) Locked jaw

(k) Loosening of teeth

(l) Loosening of veneer

(m) Periodontal disease

(n) Pulp necrosis resulting in a dead tooth

(o) Severe open bite

(p) Tooth discoloration

(q) Tooth fracture

(r) Worsening of patient bite

50. The fact the Products are associated with so many adverse effects confirms that, contrary to Defendant Dentsply's (mis)representations, there was not sufficient medical oversight of the Products, and the Products were not safe and effective in the treatment of misaligned teeth.

51. Defendant Dentsply had knowledge of this extensive and consistent pattern of contraindications and adverse effects associated with the Products. From January 1, 2021, through at least October 31, 2024, a Vice President in Defendant Dentsply's Regulatory Affairs Department or its Quality Systems Department served as the point of contact for Byte-related adverse event reports filed with the U.S. Food and Drug Administration. As part of its FDA reporting role, Defendant Dentsply's quality executives had access to all patient complaints—including both "serious" complaints (those involving injury) and "non-serious" complaints—through a sophisticated database called Trackwise, a quality management system purpose-built for FDA reporting. Nevertheless, Defendant Dentsply continued to market and promote the Products to consumers as safe and effective in the treatment of misaligned teeth.

52. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

## II. Defendant Dentsply Publicly Admits to the Products' Flaws

53. On October 24, 2024, Defendant Dentsply was finally forced to announce that Byte would no longer be selling Byte Aligner Systems and Impression Kits to consumers. In a press release, Defendant Dentsply cryptically and oddly portrayed this as a mere "suspension" of sales and marketing for an unspecified "review of certain regulatory requirements," in consultation with

the government.[14]

54. The following day, on October 25, 2024, Defendant Dentsply's CEO Simon Campeon publicly acknowledged the inherent flaw in the Byte Products business model—its wholesale lack of true oversight by dental professionals. In a publicly available conference call with investors, Campeon stated:

> Through this process and in connection with our ongoing discussions with FDA, we have determined that our patient onboarding workflow may not provide adequate assurance that certain contraindication contraindicated [sic] patients do not enter treatment with Byte aligners.[15]

55. Even then, notwithstanding the volume and variety of adverse incidents reported to the FDA, Campeon minimized the harm suffered by consumers. He went on to state:

> While we continue to believe the potential risk to patients remains low, we made the decision to voluntarily suspend sales and marketing for these products as we conduct our review.[16]

56. Yet, given its access to internal complaint records and government reporting role, Defendant Dentsply knew that serious adverse effects were associated with the Products well before late October 2024. As such, Defendant Dentsply continued to perpetrate the years-long deception even after acknowledging that the Products were unfit for consumer use.

57. Once it was publicly revealed that, in fact, Byte's Products were neither safe nor effective for use by consumers, it was evident that the Products were valueless or at least not worth what Byte charged for them. Thus, on October 25, 2024, Byte posted on its website that it would

---

[14] Dentsply Sirona Provides Update on Byte Aligner Products, Oct. 24, 2024 (available at https://investor.dentsplysirona.com/news-releases/news-release-details/dentsply-sirona-provides-update-byte-aligner-products, last accessed: Apr. 16, 2026).
[15] Webcast of Dentsply Sirona Conference Call on Byte Aligner Products, Oct. 25, 2024, at 00:03:44 (previously available at https://investor.dentsplysirona.com/events/event-details/dentsply-sirona-conference-call, last accessed: Apr. 13, 2025).
[16] *Id.*

suspend taking new orders.[17] Soon thereafter, Byte ceased taking new orders for the Products, was wound down as a business, and is no longer operational.

## III. The Plaintiffs Suffered Damages

### A. Florida Plaintiffs

**Plaintiff Paula J. Phillips (Florida)**

58. On or about April 18, 2024, Plaintiff Paula J. Phillips saw an ad for the Products marketed by Defendant Dentsply. That same day, she accessed www.Byte.com from South Florida. By accessing the Byte website, Plaintiff Paula J. Phillips thereby accessed the statements and representations contained on the website. At that time, she ordered and paid $14.95 for an impression kit from Byte's website. She made the impression and mailed it back to Byte.

59. On or about May 2, 2024, Ms. Phillips again accessed the Byte website, where she again accessed the statements and representations contained on the website. At that time, she purchased the aligners from the Byte website for $2,499.00, several other related items to be used with the aligners, and a Byte "protection plan," for a total price of $3,338.02. She paid Byte using a Florida-based account and entered an installment contract with Byte to make the payments.

60. The installment contract called for the automatic debit of $139.08 on a monthly basis for 24 months starting May 2, 2024. The monthly debits commenced at that time and

---

[17] The October 2024 version of the message to consumers kept up the charade by insisting the Products were safe. It stated, "While we continue to believe the potential risk to patients remains low, we made the decision to voluntarily pause shipment and processing of new and recently placed orders for Byte Aligners and Impression Kits while we perform a more comprehensive review." Byte, Important Message for Patients, Oct. 25, 2024 (available at https://web.archive.org/web/20241031050907/https://www.byte.com/patient-message, last accessed April 16, 2026). This is in stark contrast to today's version of the message, which simply reads, "Byte has concluded its operations. If you have any questions, please email inquiries@byte.com." (https://www.byte.com, last accessed Sept. 25, 2026).

continued thereafter on a monthly basis in accordance with the installment contract's terms.

61. Ms. Phillips never entered any contract with Defendant Dentsply.

62. In or about late May 2024, Ms. Phillips received the aligners. After she started using the aligners, she began experiencing pain and bleeding in her mouth. The severity of the pain and bleeding worsened until Ms. Phillips stopped using the aligners.

63. Ms. Phillips inquired about a refund for her purchase of the Products; however, Byte's website advised that due to the nature of the Products, no refunds are available. Thereafter, on or about February 12, 2025, Ms. Phillips learned that Byte had stopped selling the Products back in October 2024. She then contacted Byte to request a full refund of the purchase price. None was ever paid.

**Plaintiff David Bruck (Florida)**

64. On or about December 6, 2021, Plaintiff David Bruck, at the time a resident of the State of Florida (and now a resident of the State of Illinois), accessed www.Byte.com from the State of Florida based on various promotional statements in the public domain touting the safety and efficacy of the Products.

65. By accessing the Byte website, Plaintiff David Bruck thereby accessed the statements and representations contained on the website. At that time, Plaintiff David Bruck ordered and paid $75.05 for an impression kit from the Byte website. Plaintiff David Bruck then received the kit, made the impression, and mailed it back to Byte.

66. On or about December 19, 2021, Plaintiff David Bruck again accessed the Byte website from the State of Florida, where Plaintiff David Bruck again accessed the statements and representations contained on the website. At that time, Plaintiff David Bruck purchased the aligners from the Byte website for $1,945.00.

67. Plaintiff David Bruck entered an installment contract with Byte to make the payments. The installment contract called for the automatic debit of $81.04 on a monthly basis for 24 months starting December 19, 2021. The monthly debits commenced at that time and continued thereafter on a monthly basis in accordance with the installment contract's terms.

68. Plaintiff David Bruck never entered any contract with Defendant Dentsply.

69. In or about early 2022, Plaintiff David Bruck received the aligners in the State of Florida. After he started using the aligners, he experienced complications, including the aligners pushing his bottom front teeth into his gum line.

70. Plaintiff David Bruck complained about his experience with the Products and inquired about a refund for his purchase of the Products. No refund was ever paid.

**Plaintiff Laura Duke (Florida)**

71. In or about late 2021/early 2022, Plaintiff Laura Duke, at the time (and still today) a resident of the State of Florida, accessed www.Byte.com from the State of Florida based on various promotional statements in the public domain touting the safety and efficacy of the Products.

72. By accessing the Byte website, Plaintiff Laura Duke thereby accessed the statements and representations contained on the website. At that time, Plaintiff Laura Duke ordered and paid for an impression kit from the Byte website. Plaintiff Laura Duke then received the kit, made the impression, and mailed it back to Byte.

73. In or about January/February 2022, Plaintiff Laura Duke again accessed the Byte website from the State of Florida, where Plaintiff Laura Duke again accessed the statements and representations contained on the website. At that time, Plaintiff Laura Duke purchased the aligners from the Byte website for $2,700.00 and paid an additional $700.00 for a Byte "protection plan"

for a total price of $3,400.00.

74. Plaintiff Laura Duke paid Byte in full.

75. Plaintiff Laura Duke never entered any contract with Defendant Dentsply.

76. In or about early 2022, after purchasing them, Plaintiff Laura Duke received the aligners in the State of Florida. After she started using the aligners, she experienced complications, including ill-fitting aligners and periodontal disease.

77. Plaintiff Laura Duke complained about her experience with the Products, and in late 2025, inquired about a refund for her purchase of the Products. No refund was ever paid.

**B. Alabama Plaintiff**

**Plaintiff Christopher Analista (Alabama)**

78. On or about June 4, 2022, Plaintiff Christopher Analista, at the time a resident of the State of Alabama, and still a resident of the State of Alabama, accessed www.Byte.com from the State of Alabama based on various promotional statements in the public domain touting the safety and efficacy of the Products.

79. By accessing the Byte website, Plaintiff Christopher Analista thereby accessed the statements and representations contained on the website. At that time, Plaintiff Christopher Analista ordered and paid $16.52 for an impression kit from the Byte website. Plaintiff Christopher Analista then received the kit, made the impression, and mailed it back to Byte.

80. On or about June 21, 2022, Plaintiff Christopher Analista again accessed the Byte website from the State of Alabama, where Plaintiff Christopher Analista again accessed the statements and representations contained on the website. At that time, Plaintiff Christopher Analista purchased the aligners from the Byte website for $1,645.00.

81. Plaintiff Christopher Analista never entered any contract with Defendant Dentsply.

82. Sometime soon after purchasing them, Plaintiff Christopher Analista received the aligners in the State of Alabama. After Plaintiff Christopher Analista started using the aligners, he experienced complications, including ill-fitting aligners, tooth cracking, and continued misalignment of his teeth.

83. Plaintiff Christopher Analista complained about his experience with the Products and did not receive a proper response from Byte.

84. He was injured in an amount equivalent to the amount paid for the Products and entitled to a refund for the same amount.

### C. California Plaintiffs

**Plaintiff Cheyanne Seay (California)**

85. On or about August 8, 2022, Plaintiff Cheyanne Seay, at the time a resident of the State of California, and now a resident of the State of Texas, accessed www.Byte.com from the State of California based on various promotional statements in the public domain touting the safety and efficacy of the Products.

86. By accessing the Byte website, Plaintiff Cheyanne Seay thereby accessed the statements and representations contained on the website. At that time, Plaintiff Cheyanne Seay ordered and paid $14.95 for an impression kit from Byte from the website. Plaintiff Cheyanne Seay then received the kit, made the impression, and mailed it back to Byte.

87. On March 28, 2023, Plaintiff Cheyanne Seay again accessed the Byte website from the State of California, where Plaintiff Cheyanne Seay again accessed the statements and representations contained on the website. At that time, Plaintiff Cheyanne Seay purchased the aligners from the Byte website for $1,699.00.

88. Plaintiff Cheyanne Seay never entered any contract with Defendant Dentsply.

89. In or about April 2023, Plaintiff Cheyanne Seay received the aligners in the State of California. After Plaintiff Cheyanne Seay started using the aligners, she experienced complications, including ill-fitting and cracked aligners, unwanted gaps in teeth, chipped teeth, and a lost crown on a back molar.

90. Plaintiff Cheyanne Seay complained about her experience with the Products and inquired about a refund for her purchase of the Products. No refund was ever paid.

**Plaintiff Heather McCarthy (California)**

91. On or about September 4, 2024, Plaintiff Heather McCarthy, at the time (and still today) a resident of the State of California, accessed www.Byte.com from the State of California based on various promotional statements in the public domain touting the safety and efficacy of the Products.

92. By accessing the Byte website, Plaintiff Heather McCarthy thereby accessed the statements and representations contained on the website. At that time, Plaintiff Heather McCarthy ordered and paid $14.95 for an impression kit from the Byte website. Plaintiff Heather McCarthy then received the kit, made the impression, and mailed it back to Byte.

93. On or about September 23, 2024, Plaintiff Heather McCarthy again accessed the Byte website from the State of California, where Plaintiff Heather McCarthy again accessed the statements and representations contained on the website.

94. At that time, Plaintiff Heather McCarthy purchased the aligners from the Byte website for $2,249.00. Plaintiff Heather McCarthy never entered any contract with Defendant Dentsply.

95. After paying for the aligners, Plaintiff Heather McCarthy received the aligners in the State of California. After Plaintiff Heather McCarthy started using the aligners, she began

experiencing complications, including ill-fitting aligners, continued crowding and crooked bottom teeth, crowns in her upper teeth coming off, and a cracked molar.

96. Plaintiff Heather McCarthy complained about her experience with the Products and inquired about a refund for her purchase of the Products. No refund was ever paid.

**D. Hawaii Plaintiff**

**Plaintiff William Cragun II (Hawaii)**

97. On or about March 11, 2024, Plaintiff William Cragun II, at the time (and still today) a resident of the State of Hawaii, accessed www.Byte.com from the State of Hawaii based on various promotional statements in the public domain touting the safety and efficacy of the Products.

98. By accessing the Byte website, Plaintiff William Cragun II thereby accessed the statements and representations contained on the website. At that time, Plaintiff William Cragun II ordered and paid $19.95 for an impression kit from the Byte website. He then received the kit, made the impression, and mailed it back to Byte.

99. On or about April 23, 2024, Plaintiff William Cragun II again accessed the Byte website from the State of Hawaii, where he again accessed the statements and representations contained on the website. At that time, Plaintiff William Cragun II purchased the aligners from the Byte website for $1,699.00.

100. Plaintiff William Cragun II never entered any contract with Defendant Dentsply.

101. In or about May 2024, Plaintiff William Cragun II received the aligners in the State of Hawaii. After he started using the aligners, he saw that they did not straighten his bottom teeth as expected by him. Despite using the aligners for multiple months, he saw no improvement in the alignment of his bottom teeth and stopped using the aligners.

102. Plaintiff William Cragun II complained about his experience with the Products and inquired about a refund for his purchase of the Products. No refund was ever paid.

**E. Illinois Plaintiffs**

**Plaintiff Andriana Brown (Illinois)**

103. In or about early 2022, Plaintiff Andriana Brown, at the time (and still today) a resident of the State of Illinois, accessed www.Byte.com from the State of Illinois based on various promotional statements in the public domain touting the safety and efficacy of the Products.

104. By accessing the Byte website, Plaintiff Andriana Brown thereby accessed the statements and representations contained on the website. At that time, Plaintiff Andriana Brown ordered and paid for an impression kit from the Byte website. Plaintiff Andriana Brown then received the kit, made the impression, and mailed it back to Byte.

105. On or about early 2022, Plaintiff Andriana Brown again accessed the Byte website from the State of Illinois, where Plaintiff Andriana Brown again accessed the statements and representations contained on the website. At that time, Plaintiff Andriana Brown purchased the aligners from the Byte website and a Byte "protection plan," for a total price of $2,295.00.

106. Plaintiff Andriana Brown entered an installment contract with Byte to make the payments. Plaintiff Andriana Brown's installment contract called for the automatic debit of $82.00 on a monthly basis for 32 months starting February 24, 2022. The monthly debits commenced at that time and continued thereafter on a monthly basis in accordance with the installment contract's terms.

107. Plaintiff Andriana Brown never entered any contract with Defendant Dentsply.

108. In or about early 2022, Plaintiff Andriana Brown received the aligners in the State of Illinois. After using the aligners, she experienced complications, including ill-fitting aligners,

the development of unwanted gaps in her front top and bottom teeth, and a misalignment of her bite.

109. Plaintiff Andriana Brown complained about her experience with the Products and inquired about a refund for her purchase of the Products. No refund was ever paid.

**Plaintiff Jamie Ricks (Illinois)**

110. On or about 2020, Plaintiff Jamie Ricks, at the time (and still today) a resident of the State of Illinois, accessed www.Byte.com from the State of Illinois based on various promotional statements in the public domain touting the safety and efficacy of the Products.

111. By accessing the Byte website, Plaintiff Jamie Ricks thereby accessed the statements and representations contained on the website. At that time, Plaintiff Jamie Ricks ordered and paid for an impression kit from the Byte website for her daughter, who was a minor at the time, but is now an adult. Plaintiff Jamie Ricks then received the kit, had her daughter make the impression, and mailed it back to Byte.

112. On or about 2020, Plaintiff Jamie Ricks again accessed the Byte website from the State of Illinois, where she again accessed the statements and representations contained on the website. At that time, she purchased the aligners from the Byte website for approximately $2,000.00 for her daughter's use. She made monthly payments in installments of $86.97 for approximately 24 months until Byte was paid in full.

113. Plaintiff Jamie Ricks never entered any contract with Defendant Dentsply.

114. In or about 2020, Plaintiff Jamie Ricks received the aligners in the State of Illinois for her daughter's use. After her daughter started using the aligners, she experienced complications, including ill-fitting aligners, no significant change in her teeth, and a continuously overlapping tooth that was never corrected.

115. Plaintiff Jamie Ricks complained about her experience with the Products. No refund was ever paid.

**F. Kansas Plaintiff**

**Plaintiff Jade Erpelding (Kansas)**

116. On or about October 17, 2021, Plaintiff Jade Erpelding (nee Jenkins), at the time a resident of the State of Kansas, and now a resident of the State of Ohio, accessed www.Byte.com from the State of Kansas based on various promotional statements in the public domain touting the safety and efficacy of the Products.

117. By accessing the Byte website, Plaintiff Jade Erpelding thereby accessed the statements and representations contained on the website. At that time, Plaintiff Jade Erpelding ordered and paid $16.31 for an impression kit from the Byte website. Plaintiff Jade Erpelding then received the kit, made the impression, and mailed it back to Byte.

118. On or about June 24, 2022, Plaintiff Jade Erpelding again accessed the Byte website from the State of Kansas, where she again accessed the statements and representations contained on the website. At that time, she purchased the aligners from the Byte website for $1,495.00.

119. Plaintiff Jade Erpelding entered an installment contract where no interest would be owed if the total was paid in full within six (6) months. She made the first payment towards the aligners in August 2022 and continued thereafter to make payments for six (6) months until the total amount was paid off in January 2023, in accordance with the installment contract's terms.

120. Plaintiff Jade Erpelding never entered any contract with Defendant Dentsply.

121. In or about July 2022, Plaintiff Jade Erpelding received the aligners in the State of Kansas. She experienced various complications with the aligners. They were ill-fitting, caused severe pain in her teeth, and pushed her teeth forward and stretched her gums to the point that she

was required to undergo a gum graft.

122. Plaintiff Jade Erpelding complained about her experience with the Products and inquired about a refund for her purchase of the Products. No refund was ever paid.

### G. Massachusetts Plaintiffs

**Plaintiff Tianna Barboza (Massachusetts)**

123. On or about April 4, 2022, Plaintiff Tianna Barboza, at the time (and still today) a resident of the State of Massachusetts, accessed www.Byte.com from the State of Massachusetts based on various promotional statements in the public domain touting the safety and efficacy of the Products.

124. By accessing the Byte website, Plaintiff Tianna Barboza thereby accessed the statements and representations contained on the website. At that time, Plaintiff Tianna Barboza ordered and paid $18.00 for an impression kit from the Byte website. Plaintiff Tianna Barboza then received the kit, made the impression, and mailed it back to Byte.

125. On or about May 5, 2022, Plaintiff Tianna Barboza again accessed the Byte website from the State of Massachusetts, where Plaintiff Tianna Barboza again accessed the statements and representations contained on the website. At that time, Plaintiff Tianna Barboza purchased the aligners from the Byte website for $2,200.00 for a total price of $2,218.00.

126. Plaintiff Tianna Barboza entered an installment contract to make the payments. She made monthly payments of $200.00 in accordance with the installment contract's terms until she paid in full for the aligners.

127. Plaintiff Tianna Barboza never entered any contract with Defendant Dentsply.

128. Plaintiff Tianna Barboza received the aligners in the State of Massachusetts. After she started using the aligners, she experienced dental complications, including bone loss requiring

oral surgery.

**Plaintiff Caresha Burrell (Massachusetts)**

129. In or about January 2024, Plaintiff Caresha Burrell, at the time (and still today) a resident of the State of Massachusetts, accessed www.Byte.com from the State of Massachusetts based on various promotional statements in the public domain touting the safety and efficacy of the Products.

130. By accessing the Byte website, Plaintiff Caresha Burrell thereby accessed the statements and representations contained on the website. At that time, Plaintiff Caresha Burrell ordered and paid approximately $15.00 for an impression kit from the Byte website. Plaintiff Caresha Burrell then received the kit, made the impression, and mailed it back to Byte.

131. On or about February 19, 2024, Plaintiff Caresha Burrell again accessed the Byte website from the State of Massachusetts, where Plaintiff Caresha Burrell again accessed the statements and representations contained on the website. At that time, Plaintiff Caresha Burrell purchased the aligners from the Byte website for $1,999.00, along with several other related items to be used with the aligners, and a Byte "protection plan," for a total price of $2,735.19.

132. Plaintiff Caresha Burrell entered an installment contract with Byte to make the payments. Plaintiff Caresha Burrell's installment contract called for the automatic debit of a minimum of $89 monthly. Plaintiff Caresha Burrell regularly paid more than the minimum and paid off the full amount owed for the aligners.

133. Plaintiff Caresha Burrell never entered any contract with Defendant Dentsply.

134. In or about March 2024, Plaintiff Caresha Burrell received the aligners in the State of Massachusetts. After Plaintiff Caresha Burrell started using the aligners, she experienced complications, including ill-fitting aligners, tooth sensitivity, excessive pain and gum bleeding,

jaw issues, and a misaligned bite that did not pre-exist use of the Products.

135. Plaintiff Caresha Burrell complained about her experience with the Products and inquired about a refund for her purchase of the Products. No refund was ever paid.

**Plaintiff Scott Heller (Massachusetts)**

136. In or about August 2024, Plaintiff Scott Heller, at the time (and still today) a resident of the State of Massachusetts, accessed www.Byte.com from the State of Massachusetts based on various promotional statements in the public domain touting the safety and efficacy of the Products. By accessing the Byte website, he thereby accessed the statements and representations contained on the website.

137. At that time, Plaintiff Scott Heller ordered and paid $14.95 for an impression kit from the Byte website. Plaintiff Scott Heller then received the kit, made the impression, and mailed it back to Byte.

138. On or about September 10 and 11, 2024, Plaintiff Scott Heller again accessed the Byte website from the State of Massachusetts, where he again accessed the statements and representations contained on the website. At that time, Plaintiff Scott Heller purchased the aligners from the Byte website for $1,949.00, for a total price spent of $1,963.95.

139. Plaintiff Scott Heller paid Byte in full.

140. Plaintiff Scott Heller never entered any contract with Defendant Dentsply.

141. In or about September 2024, after paying for the aligners, Plaintiff Scott Heller received the aligners in the State of Massachusetts. After using the aligners, a tooth remained misaligned and he experienced broken aligners.

**H. Michigan Plaintiff**

**Plaintiff Abby Long (Michigan)**

142. On or about September 18, 2024, Plaintiff Abby Long, at the time a resident of the State of Michigan, and now a resident of the State of Ohio, accessed www.Byte.com from the State of Michigan based on various promotional statements in the public domain touting the safety and efficacy of the Products.

143. By accessing the Byte website, Plaintiff Abby Long thereby accessed the statements and representations contained on the website. At that time, Plaintiff Abby Long ordered and paid $17.95 for an impression kit from the Byte website. Plaintiff Abby Long then received the kit, made the impression, and mailed it back to Byte.

144. In or about late September/early October 2024, Plaintiff Abby Long again accessed the Byte website from the State of Michigan, where Plaintiff Abby Long again accessed the statements and representations contained on the website. At that time, Plaintiff Abby Long purchased the aligners from the Byte website for $2,599.00.

145. Plaintiff Abby Long entered an installment contract with Byte to make the payments. Plaintiff Abby Long's installment contract called for the automatic debit of $108.29 on a monthly basis for 24 months starting October 8, 2024. The monthly debits commenced at that time and continued thereafter on a monthly basis in accordance with the installment contract.

146. Plaintiff Abby Long never entered any contract with Defendant Dentsply.

147. After she purchased the aligners, Plaintiff Abby Long received the aligners in the State of Michigan. After she started using the aligners, she experienced complications, including ill-fitting aligners, continued misalignment of her teeth, gingivitis, and bleeding gum issues.

148. Plaintiff Abby Long repeatedly complained about the Products and sought relief from further payments. This was rejected and no refund was ever paid.

**I. Minnesota Plaintiff**

**Plaintiff Jacqueline Ahlers (Minnesota)**

149. In or about June 2023, Plaintiff Jacqueline Ahlers, at the time (and still today) a resident of the State of Minnesota, accessed www.Byte.com from the State of Minnesota based on various promotional statements in the public domain touting the safety and efficacy of the Products.

150. By accessing the Byte website, Plaintiff Jacqueline Ahlers thereby accessed the statements and representations contained on the website. At that time, she ordered and paid $15.95 for an impression kit from the Byte website. She then received the kit, made the impression, and mailed it back to Byte.

151. In or about late June 2023, Plaintiff Jacqueline Ahlers again accessed the Byte website from the State of Minnesota, where Plaintiff Jacqueline Ahlers again accessed the statements and representations contained on the website. At that time, Plaintiff Jacqueline Ahlers purchased the aligners from the Byte website for $2,399.00, and a Byte "protection plan," for $399.00.

152. Plaintiff Jacqueline Ahlers never entered any contract with Defendant Dentsply.

153. On or about June 25, 2023, Plaintiff Jacqueline Ahlers received the aligners in the State of Minnesota. After she started using the aligners, she began experiencing worsening alignment of teeth on the bottom rows and gaps in the top teeth.

154. Plaintiff Jacqueline Ahlers complained about her experience with the Products and inquired about a refund for her purchase of the Products. She was paid only a partial refund.

**J. New Jersey Plaintiffs**

**Plaintiff Amanda Abrahamowicz (New Jersey)**

155. On or about August 1, 2023, Plaintiff Amanda Abrahamowicz, at the time (and still

today) a resident of the State of New Jersey, accessed www.Byte.com from the State of New Jersey based on various promotional statements in the public domain touting the safety and efficacy of the Products.

156. By accessing the Byte website, Plaintiff Amanda Abrahamowicz thereby accessed the statements and representations contained on the website. At that time, she ordered and paid approximately $20 for an impression kit from the Byte website. Plaintiff Amanda Abrahamowicz then received the kit, made the impression, and mailed it back to Byte.

157. On or about August 18, 2023, Plaintiff Amanda Abrahamowicz again accessed the Byte website from the State of New Jersey, where Plaintiff Amanda Abrahamowicz again accessed the statements and representations contained on the website. At that time, Plaintiff Amanda Abrahamowicz purchased the aligners from the Byte website for $2,848.00.

158. Plaintiff Amanda Abrahamowicz entered a loan contract, with interest, to make monthly payments toward the purchase price. With interest, she was to pay $4,185.00 at a schedule of $116.25 monthly for 36 months starting in September 2023. Monthly debits commenced at that time and continued thereafter monthly in accordance with the loan contract's terms.

159. Plaintiff Amanda Abrahamowicz never entered any contract with Defendant Dentsply.

160. In or about fall 2023, after entering the loan contract, Plaintiff Amanda Abrahamowicz received the aligners in the State of New Jersey. After she started using the aligners, she experienced complications, including uncomfortable aligners and cracked fillings requiring additional dental treatment.

161. Plaintiff Amanda Abrahamowicz complained about her experience with the Products. She did not receive a refund.

**Plaintiff Elizaveta Lapshina (New Jersey)**

162. In or about February 2024, Plaintiff Elizaveta Lapshina, at the time (and still today) a resident of the State of New Jersey, accessed www.Byte.com from the State of New Jersey based on various promotional statements in the public domain touting the safety and efficacy of the Products.

163. By accessing the Byte website, Plaintiff Elizaveta Lapshina thereby accessed the statements and representations contained on the website. At that time, she ordered and paid $17.95 for an impression kit from the Byte website. She then received the kit, made the impression, and mailed it back to Byte.

164. On or about February 2024, Plaintiff Elizaveta Lapshina again accessed the Byte website from the State of New Jersey, where she again accessed the statements and representations contained on the website. At that time, she purchased the aligners from the Byte website for $2,399.00.

165. Plaintiff Elizaveta Lapshina never entered any contract with Defendant Dentsply.

166. In or about May 2024, Plaintiff Elizaveta Lapshina received the aligners in the State of New Jersey. After she started using the aligners, she began experiencing complications, including ill-fitting aligners, teeth sensitivity, and continuous crowding of her front bottom teeth.

167. Plaintiff Elizaveta Lapshina complained about her experience with the Products and inquired about a refund for her purchase of the Products. No refund was ever paid.

**K. New York Plaintiffs**

**Plaintiff Christine Bukowski (New York)**

168. On or about April 16, 2020, Plaintiff Christine Bukowski, at the time (and still today) a resident of the State of New York, accessed www.Byte.com from the State of New York

based on various promotional statements in the public domain touting the safety and efficacy of the Products.

169. By accessing the Byte website, Plaintiff Christine Bukowski thereby accessed the statements and representations contained on the website. At that time, Plaintiff Christine Bukowski ordered and paid $19.95 for an impression kit from the Byte website. Plaintiff then received the kit, made the impression, and mailed it back to Byte.

170. On or about June 4, 2020, Plaintiff Christine Bukowski again accessed the Byte website from the State of New York, where Plaintiff Christine Bukowski again accessed the statements and representations contained on the website. At that time, Plaintiff Christine Bukowski purchased the aligners from the Byte website for $1,745.00.

171. Plaintiff Christine Bukowski never entered any contract with Defendant Dentsply.

172. In or about July 2020, Plaintiff Christine Bukowski received the aligners in the State of New York. After Plaintiff Christine Bukowski started using the aligners, she experienced complications, including ill-fitting aligners, a failure to correct her lower teeth, receding gums, pushing of her incisors forward, and infected and dead tooth, resulting in a root canal and a likely future gum graft.

173. Plaintiff Christine Bukowski complained about her experience with the Products. No refund was ever paid.

**Plaintiff Katherine Gerdes (New York)**

174. On or about April 29, 2020, Plaintiff Katherine Gerdes, at the time (and still today) a resident of the State of New York, accessed www.Byte.com from the State of New York based on various promotional statements in the public domain touting the safety and efficacy of the Products.

175. By accessing the Byte website, Plaintiff Katherine Gerdes thereby accessed the statements and representations contained on the website. At that time, Plaintiff Katherine Gerdes ordered and paid $29.95 for an impression kit from Byte from the website. Plaintiff Katherine Gerdes then received the kit, made the impression, and mailed it back to Byte.

176. On or about May 19, 2020, Plaintiff Katherine Gerdes again accessed the Byte website from the State of New York, where Plaintiff Katherine Gerdes again accessed the statements and representations contained on the website. At that time, Plaintiff Katherine Gerdes purchased the aligners from the Byte website for $1,895.00.

177. Plaintiff Katherine Gerdes paid Byte in full.

178. Plaintiff Katherine Gerdes never entered any contract with Defendant Dentsply.

179. On or about June 18, 2020, Plaintiff Katherine Gerdes received the aligners in the State of New York. After she started using the aligners, she experienced complications, including ill-fitting aligners, worsened alignment of her teeth, and wear down of tooth enamel.

180. Plaintiff Katherine Gerdes complained about her experience with the Products. No refund was ever paid, and her personal dental insurance only paid her a portion of what she paid to Byte.

## IV. <u>Class Action Allegations</u>

181. The Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, seeking damages and declaratory relief pursuant to the statutory laws of the states listed below, on behalf of the following classes (the "State Classes"):

**<u>Florida Class:</u>** All persons in Florida who purchased a Byte Aligner System and Impression Kit;

**<u>Alabama Class:</u>** All persons in Alabama who purchased a Byte Aligner System and Impression Kit.

**<u>California Class:</u>** All persons in California who purchased a Byte Aligner System and Impression Kit;

**<u>Hawaii Class:</u>** All persons in Hawaii who purchased a Byte Aligner System and Impression Kit;

**<u>Illinois Class:</u>** All persons in Illinois who purchased a Byte Aligner System and Impression Kit;

**<u>Kansas Class:</u>** All persons in Kansas who purchased a Byte Aligner System and Impression Kit;

**<u>Massachusetts Class:</u>** All persons in Massachusetts who purchased a Byte Aligner System and Impression Kit;

**<u>Michigan Class:</u>** All persons in Michigan who purchased a Byte Aligner System and Impression Kit;

**<u>Minnesota Class:</u>** All persons in Minnesota who purchased a Byte Aligner System and Impression Kit;

**<u>New Jersey Class:</u>** All persons in New Jersey who purchased a Byte Aligner System and Impression Kit;

**<u>New York Class:</u>** All persons in New York who purchased a Byte Aligner System and Impression Kit; and

182. Excluded from the class are Defendant Dentsply, Byte, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

183. The Plaintiffs reserve the right to amend or otherwise alter the class definition at the appropriate time, or to propose subclasses, in response to facts learned from investigation or discovery or otherwise.

184. Numerosity: The proposed State Classes are so numerous that individual joinder of all members is impracticable. The exact number of Class members is not known at this time but can be determined based on the Products' sales records.

185. Predominance of Common Questions: There are many questions of law and fact common to the Plaintiffs and the State Classes, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

a. Whether Defendant Dentsply engaged in the unlawful conduct alleged herein;

b. Whether Defendant Dentsply's statements were likely to mislead and deceive consumers acting reasonably in similar circumstances;

c. Whether Defendant Dentsply's statements were unlawful, false, deceptive, and/or misleading;

d. Whether Defendant Dentsply misled or deceived Plaintiffs and Class members about the Products;

e. Whether Defendant Dentsply's actions violate state consumer protection laws;

f. Whether Plaintiffs and Class members are entitled to declaratory relief;

g. Whether Defendant Dentsply's conduct economically injured Plaintiffs and Class members (and in what amount); and

h. Whether Plaintiffs and Class members are entitled to the recovery of punitive damages (and in what amount).

186. Typicality: The Plaintiffs' claims are typical of those of the members of the State Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant Dentsply's conduct. The Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the State Classes. Further, there are no defenses available to Defendant Dentsply that are unique to the Plaintiffs or to any particular Class members.

187. Adequacy of Representation: The Plaintiffs will fairly and adequately represent and protect the interests of the State Classes. The Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation. The Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the State Classes and have the financial resources to do so.

188. Superiority of Class Action: The Plaintiffs and Class members suffered, and will continue to suffer, harm as a result of Defendant Dentsply's unlawful and wrongful conduct described herein. A class action is superior to other available remedies for the fair and efficient adjudication of the present controversy.

## CAUSES OF ACTION

## COUNT I
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
**(Fla. Stat. §501.201, et seq.)**
**(By the Florida Plaintiffs, individually, and on behalf of the Florida Class)**

189. Florida Plaintiffs Paula J. Phillips, David Bruck, and Laura Duke of the State of Florida incorporate and reallege paragraphs 1 through 188 above as if fully set forth herein.

190. This is an action pursuant to Florida Statutes § 501.201, et seq., otherwise known as the Florida Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA"). Florida Plaintiffs Paula J. Phillips, David Bruck, and Laura Duke bring this Count on behalf of themselves

and the Florida Class members.

191. FDUTPA renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.204.

192. Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

193. Defendant Dentsply engaged in unfair, deceptive, and/or unconscionable acts or practices, by, among other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

194. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

195. Through such unfair, unconscionable, and/or deceptive acts or practices, Defendant Dentsply caused damages to Florida Plaintiffs Paula J. Phillips, David Bruck, and Laura Duke and the Florida Class members. The deceptive practice described herein, in which Defendant Dentsply

participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. Florida Plaintiffs Paula J. Phillips, David Bruck, and Laura Duke and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

196. Fla. Stat. § 501.211(1) provides for declaratory relief. The Florida Plaintiffs Paula J. Phillips, David Bruck, and Laura Duke, on behalf of themselves and the Florida Class members, seek a declaration that Defendant Dentsply's acts or practices of marketing and advertising the Products violate FDUTPA.

197. Fla. Stat. § 501.211(2) provides for the recovery of actual damages, plus attorneys' fees and costs as provided in Fla. Stat. § 501.2105. The Florida Plaintiffs Paula J. Phillips, David Bruck, and Laura Duke, on behalf of themselves and the Florida Class members, seek actual damages, attorneys' fees, and costs as provided by FDUTPA.

**COUNT II**
**VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**(Ala. Code § 8-19-1, et seq.)**
**(By the Alabama Plaintiff, individually, and on behalf of the Alabama Class)**

198. Alabama Plaintiff Christopher Analista of the State of Alabama incorporates and realleges paragraphs 1 through 188 above as if fully set forth herein.

199. Alabama Plaintiff Christopher Analista brings this Count on behalf of himself and Alabama Class members pursuant to Ala. Code § 8-19-1, et seq.

200. The Alabama Deceptive Trade Practices Act (hereinafter "ADTPA") declares unlawful specified "deceptive acts or practices in the conduct of any trade or commerce," Ala. Code § 8-19-5, including "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce," Ala. Code § 8-19-5(27).

201. Among other purposes, the ADTPA reflects the Legislature's intent that "[t]he

public health, welfare and interest require a strong and effective consumer protection program to protect the interest of both the consuming public and the legitimate businessperson." Ala. Code § 8-19-2. In construing Ala. Code § 8-19-5, due consideration and great weight are given to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a)(1) of the Federal Trade Commission Act. Ala. Code § 8-19-6.

202. Defendant Dentsply engaged in unfair and deceptive acts or practices, by, among other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

203. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

204. Through such unconscionable, false, misleading, and deceptive acts, Defendant Dentsply caused monetary damage to Alabama Plaintiff Christopher Analista and other consumers of the Products. The deceptive practice described herein, in which Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. Alabama Plaintiff Christopher Analista and other consumers of the Products paid more for the Products than they otherwise would have had the

truth been timely revealed and not concealed from them.

205. At least fifteen days prior to filing this Count, Alabama Plaintiff Christopher Analista communicated to Defendant Dentsply a written demand for relief, identifying the claimants and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, as required by Ala. Code § 8-19-10(e). Defendant Dentsply failed to make a written tender of settlement sufficient to compensate Alabama Plaintiff Christopher Analista for his actual damages.

206. Ala. Code § 8-19-10(a) provides for the recovery of actual damages; treble damages in the court's discretion; and, in the case of a successful action, the costs of the action together with reasonable attorneys' fees. Alabama Plaintiff Christopher Analista, on behalf of himself and the Alabama Class members, seeks actual damages, treble damages, and his costs and reasonable attorney's fee as provided by Ala. Code § 8-19-10(a).

**COUNT III**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(By the California Plaintiffs, individually, and on behalf of the California Class)**

207. California Plaintiffs Cheyanne Seay and Heather McCarthy of the State of California incorporate and reallege paragraphs 1 through 188 above as if fully set forth herein.

208. California Plaintiffs Cheyanne Seay and Heather McCarthy bring this Count on behalf of themselves and the California Class members pursuant to Cal. Bus. & Prof. Code § 17200, et seq.

209. The California Unfair Competition Law (hereinafter "UCL") proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

210. Defendant Dentsply engaged in unlawful, unfair, and fraudulent acts or practices,

and unfair, deceptive, untrue, and misleading advertising by, among other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

211. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive members of the public, including California Plaintiffs Cheyanne Seay and Heather McCarthy, acting reasonably in the same circumstances.

212. The misrepresentations and omissions described above were material. A reasonable consumer would attach importance to the existence or nonexistence of these facts in deciding whether to purchase the Products and how much to pay for them. California Plaintiffs Cheyanne Seay and Heather McCarthy relied on Defendant Dentsply's material misrepresentations and omissions in purchasing the Products. Because those misrepresentations and omissions were material, reliance and causation may be presumed or inferred.

213. Through such unlawful, unfair, and fraudulent acts, and unfair, deceptive, untrue, or misleading advertising, Defendant Dentsply caused injury in fact and lost money or property to the California Plaintiffs Cheyanne Seay and Heather McCarthy and the California Class members. The deceptive practice described herein, in which Defendant Dentsply participated and is

responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. California Plaintiffs Cheyanne Seay and Heather McCarthy and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

214. Cal. Bus. & Prof. Code § 17203 provides for restitution. California Plaintiffs Cheyanne Seay and Heather McCarthy, on behalf of themselves and the California Class members, seek restitution of all money wrongfully obtained by Defendant Dentsply through its unfair competition as authorized by Cal. Bus. & Prof. Code § 17203.

215. The California Plaintiffs Cheyanne Seay and Heather McCarthy, on behalf of themselves and the California Class members, seek an award of reasonable attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5 as the prevailing party in an action that has enforced an important right affecting the public interest and conferred a significant benefit on the general public or a large class of persons.

216. Cal. Bus. & Prof. Code § 17205 provides that the remedies available under Chapter 5 are cumulative to all other remedies or penalties available under California law. California Plaintiffs Cheyanne Seay and Heather McCarthy, on behalf of themselves and the California Class members, seek all additional relief available under California law.

**COUNT IV**
**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT**
**(Cal. Civ. Code. § 1750, et seq.)**
**(By the California Plaintiffs, individually, and on behalf of the California Class)**

217. California Plaintiffs Cheyanne Seay and Heather McCarthy of the State of California incorporate and reallege paragraphs 1 through 188 above as if fully set forth herein.

218. The California Plaintiffs Cheyanne Seay and Heather McCarthy bring this Count on behalf of themselves and the California Class members pursuant to Cal. Civ. Code § 1750, et

seq.

219. The Consumer Legal Remedies Act (hereinafter "CLRA") declares unlawful unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer. Cal. Civ. Code § 1770(a).

220. Defendant Dentsply engaged in unfair and deceptive acts or practices by, among other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

221. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers, including California Plaintiffs Cheyanne Seay and Heather McCarthy and the Class Members, acting reasonably in the same circumstances, in violation of Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9).

222. The misrepresentations and omissions described above were material. A reasonable consumer would attach importance to the existence or nonexistence of these facts in deciding whether to purchase the Products and how much to pay for them. California Plaintiffs Cheyanne Seay and Heather McCarthy relied on Defendant Dentsply's material misrepresentations and omissions in purchasing the Products. Because those misrepresentations and omissions were

material to a reasonable consumer, reliance and causation may be presumed or inferred.

223. Through such unfair and deceptive acts, Defendant Dentsply caused actual damages to the California Plaintiffs Cheyanne Seay and Heather McCarthy and the California Class members. The deceptive practice described herein, in which Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. California Plaintiffs Cheyanne Seay and Heather McCarthy and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

224. More than thirty days prior to seeking damages under this Count, the California Plaintiffs Cheyanne Seay and Heather McCarthy notified Defendant Dentsply in writing, by certified mail, return receipt requested, of the particular alleged violations of Cal. Civ. Code § 1770 and demanded that Defendant correct, repair, replace, or otherwise rectify the goods and practices at issue, as required by Cal. Civ. Code § 1782(a). Defendant failed to provide an appropriate remedy within thirty days. California Plaintiffs Cheyanne Seay and Heather McCarthy are therefore entitled to seek all remedies available under the CLRA, including damages.

225. Concurrently with the filing of this Complaint, the California Plaintiffs Cheyanne Seay and Heather McCarthy have filed the declaration required by California Civil Code § 1780(d), stating facts showing that this action has been commenced in a county described in that section as a proper place for the trial of the action. The California Plaintiffs Cheyanne Seay and Heather McCarthy have thereby complied with the venue-affidavit requirement of California Civil Code § 1780(d).

226. Cal. Civ. Code § 1780(a)(1) provides for the recovery of actual damages. California Plaintiffs Cheyanne Seay and Heather McCarthy, on behalf of themselves and the California Class

members, seek actual damages as provided by Cal. Civ. Code § 1780(a)(1).

227. Cal. Civ. Code § 1780(a)(3) provides for restitution. The California Plaintiffs Cheyanne Seay and Heather McCarthy, on behalf of themselves and the California Class members, seek restitution of property as authorized by Cal. Civ. Code § 1780(a)(3).

228. Pursuant to Cal. Civ. Code § 1780(a)(4), the California Plaintiffs Cheyanne Seay and Heather McCarthy, on behalf of themselves and the California Class members, seek punitive damages as authorized by law.

229. Pursuant to Cal. Civ. Code § 1780(d), concurrently with the filing of this amended complaint, the California Plaintiffs Cheyanne Seay and Heather McCarthy have filed affidavits stating facts showing that this action has been commenced in a county described in such section as a proper place for the trial of this action.

230. Cal. Civ. Code § 1780(e) provides for the recovery of court costs and attorneys' fees to a prevailing plaintiff. The California Plaintiffs Cheyanne Seay and Heather McCarthy, on behalf of themselves and the California Class members, seek court costs and attorneys' fees as provided by Cal. Civ. Code § 1780(e).

**COUNT V**
**VIOLATION OF HAWAII'S UNFAIR AND DECEPTIVE ACTS AND PRACTICES STATUTE**
**(Haw. Rev. Stat. §§ 480-1, et seq.)**
**(By the Hawaii Plaintiff, individually, and on behalf of the Hawaii Class)**

231. Hawaii Plaintiff William Cragun II of the State of Hawaii incorporates and realleges paragraphs 1 through 188 above as if fully set forth herein.

232. Hawaii Plaintiff William Cragun II brings this Count on behalf of himself and the Hawaii Class members pursuant to Haw. Rev. Stat. §§ 480-1, et seq.

233. Hawaii Revised Statutes § 480-2 declares unlawful "[u]nfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Haw. Rev. Stat. Ann. § 480-2(a).

234. In construing Haw. Rev. Stat. § 480-2, Hawaii courts give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting § 5(a)(1) of the Federal Trade Commission Act. Haw. Rev. Stat. § 480-2(b).

235. Defendant Dentsply engaged in unfair, deceptive, and unconscionable acts or practices, by, among other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

236. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

237. Through such unfair, deceptive, and unconscionable acts, Defendant Dentsply caused damages to Hawaii Plaintiff William Cragun II and the Hawaii Class members. The deceptive practice described herein, in which Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. Hawaii Plaintiff William Cragun II and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely

revealed and not concealed from them.

238. Haw. Rev. Stat. § 480-13(b)(1) provides for the recovery of actual damages, treble damages, and reasonable attorneys' fees and costs. Hawaii Plaintiff William Cragun II, on behalf of himself and the Hawaii Class members, seeks actual damages, treble damages, and attorneys' fees and costs as provided by Haw. Rev. Stat. § 480-13(b)(1).

239. The remedies provided by Haw. Rev. Stat. § 480-13 are cumulative and may be brought in one action.

## COUNT VI
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
**(815 Ill. Comp. Stat. Ann. 505/1, et seq.)**
**(By the Illinois Plaintiffs, individually, and on behalf of the Illinois Class)**

240. Illinois Plaintiffs Andriana Brown and Jamie Ricks of the State of Illinois incorporate and reallege paragraphs 1 through 188 above as if fully set forth herein.

241. Illinois Plaintiffs Andriana Brown and Jamie Ricks bring this Count on behalf of themselves and the Illinois Class members pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, et seq.

242. The Illinois Consumer Fraud and Deceptive Business Practices Act (hereinafter "ICFA") prohibits unfair methods of competition and unfair or deceptive acts or practices, including deception, fraud, false pretenses, false promises, misrepresentations, and the concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission, in the conduct of any trade or commerce. 815 Ill. Comp. Stat. Ann. 505/2. Among other purposes, the ICFA "shall be liberally construed to effect the purposes thereof." 815 Ill. Comp. Stat. Ann. 505/11a.

243. Defendant Dentsply engaged in unfair and deceptive acts or practices, by, among

other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

245. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

246. Through such unfair and deceptive acts, Defendant Dentsply caused damages to Illinois Plaintiffs Andriana Brown and Jamie Ricks and the Illinois Class members. The deceptive practice described herein, in which Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. Illinois Plaintiffs Andriana Brown and Jamie Ricks, along with other consumers of the Products, paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

247. 815 Ill. Comp. Stat. Ann. 505/10a(a) provides for the recovery of actual damages. Illinois Plaintiffs Andriana Brown and Jamie Ricks, on behalf of themselves and the Illinois Class members, seek actual damages as provided by 815 Ill. Comp. Stat. Ann. 505/10a(a).

248. Pursuant to 815 Ill. Comp. Stat. Ann. 505/10a(a), Illinois Plaintiffs Andriana Brown and Jamie Ricks, on behalf of themselves and the Illinois Class members, further seek punitive

damages to the extent authorized by law.

249. 815 Ill. Comp. Stat. Ann. 505/10a(c) provides for the recovery of reasonable attorneys' fees and costs to the prevailing party. Illinois Plaintiffs Andriana Brown and Jamie Ricks, on behalf of themselves and the Illinois Class members, seek reasonable attorneys' fees and costs to the extent authorized by law.

**COUNT VII**
**VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT**
**(Kan. Stat. Ann. § 50-623, et seq.)**
**(By the Kansas Plaintiff, individually, and on behalf of the Kansas Class)**

250. Kansas Plaintiff Jade Erpelding of the State of Kansas incorporates and realleges paragraphs 1 through 188 above as if fully set forth herein.

251. Kansas Plaintiff Jade Erpelding brings this Count on behalf of herself and Kansas Class members pursuant to Kan. Stat. Ann. § 50-623, et seq.

252. The Kansas Consumer Protection Act (hereinafter "KCPA") prohibits suppliers from engaging in deceptive acts or practices and unconscionable acts or practices in connection with consumer transactions. Kan. Stat. Ann. §§ 50-626(a), 50-627(a).

253. Among other purposes, the KCPA is intended to be construed liberally to "protect consumers from suppliers who commit deceptive and unconscionable practices." Kan. Stat. Ann. § 50-623(b).

254. Defendant Dentsply engaged in deceptive acts or practices, and unconscionable acts or practices in connection with consumer transactions by, among other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

255. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

256. Through such deceptive and unconscionable acts, Defendant Dentsply caused damages to Kansas Plaintiff Jade Erpelding and the Kansas Class members. The deceptive practice described herein, in which Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. Kansas Plaintiff Jade Erpelding and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

257. Kan. Stat. Ann. § 50-634(d) authorizes a consumer who suffers loss as a result of a violation of the KCPA to bring a class action for the damages caused by an act or practice violating any of the acts or practices specifically proscribed in Kan. Stat. Ann. 50-626 and 50-627. Because Defendant Dentsply's deceptive acts or practices violate Kan. Stat. Ann. 50-626(a) and its unconscionable acts or practices violate Kan. Stat. Ann. 50-627(a), Kansas Plaintiff Jade Erpelding, on behalf of herself and the Kansas Class members, seeks actual damages caused by those acts or practices as provided by Kan. Stat. Ann. § 50-634(d)(1).

258. Kan. Stat. Ann. § 50-634(a) and (c) authorize a consumer to bring a class action for declaratory judgment, injunctive relief, and appropriate ancillary relief, against an act or practice

that violates the KCPA. Kansas Plaintiff Jade Erpelding, on behalf of herself and the Kansas Class members, seeks a declaration that Defendant Dentsply's acts or practices of marketing and advertising the Products violate the KCPA and any appropriate ancillary relief.

259. Kan. Stat. Ann. § 50-634(e) authorizes an award of reasonable attorneys' fees. Kansas Plaintiff Jade Erpelding, on behalf of herself and the Kansas Class members, seeks reasonable attorneys' fees as provided by Kan. Stat. Ann. § 50-634(e).

**COUNT VIII**
**VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 93A**
**(Mass. Gen. Laws Ann. ch. 93A, § 2, et seq.)**
**(By the Massachusetts Plaintiffs, individually, and on behalf of the Massachusetts Class)**

260. Massachusetts Plaintiffs Tianna Barboza, Caresha Burrell, and Scott Heller of the State of Massachusetts incorporate and reallege paragraphs 1 through 188 above as if fully set forth herein.

261. Massachusetts Plaintiffs Tianna Barboza, Caresha Burrell, and Scott Heller bring this Count on behalf of themselves and Massachusetts Class members pursuant to Mass. Gen. Laws Ann. ch. 93A, § 2, et seq.

262. Massachusetts General Laws chapter 93A declare unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ann. ch. 93A, § 2(a).

263. In construing Mass. Gen. Laws ch. 93A, § 2(a), courts are guided by the interpretations given by the Federal Trade Commission and the federal courts to § 5(a)(1) of the Federal Trade Commission Act. Mass. Gen. Laws Ann. ch. 93A, § 2(b).

264. Defendant Dentsply engaged in unfair and deceptive acts or practices by, among other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

265. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

266. Through such unfair and deceptive acts, Defendant Dentsply caused damages to Massachusetts Plaintiffs Tianna Barboza, Caresha Burrell, and Scott Heller and the Massachusetts Class members. The deceptive practice described herein, in which Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. Massachusetts Plaintiffs Tianna Barboza, Caresha Burrell, and Scott Heller, and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

267. More than thirty days prior to filing this action, Massachusetts Plaintiffs Tianna Barboza, Caresha Burrell, and Scott Heller served on Defendant Dentsply a written demand for relief pursuant to Mass. Gen. Laws ch. 93A, § 9(3), identifying Massachusetts Plaintiffs Tianna Barboza, Caresha Burrell, and Scott Heller and reasonably describing the unfair and deceptive acts or practices relied upon and the injury suffered. Defendant Dentsply failed to make a reasonable written tender of settlement within thirty days.

268. Mass. Gen. Laws ch. 93A, § 9 provides for the recovery of actual damages,

reasonable attorneys' fees, and costs. Massachusetts Plaintiffs Tianna Barboza, Caresha Burrell, and Scott Heller, on behalf of themselves and the Massachusetts Class members, seek actual damages, attorneys' fees, and costs as provided by Mass. Gen. Laws ch. 93A, § 9.

269. Pursuant to Mass. Gen. Laws ch. 93A, § 9(3A), Massachusetts Plaintiffs Tianna Barboza, Caresha Burrell, and Scott Heller, on behalf of themselves and the Massachusetts Class members, further seek up to three but not less than two times actual damages for any willful or knowing violation of § 2, or for Defendant Dentsply's bad-faith refusal to grant relief upon demand.

270. Mass. Gen. Laws ch. 93A, § 9 further provides for equitable relief. Massachusetts Plaintiffs Tianna Barboza, Caresha Burrell, and Scott Heller, on behalf of themselves and the Massachusetts Class members, seek such other equitable relief as the Court deems necessary and proper.

**COUNT IX**
**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
**(Mich. Comp. Laws Ann. § 445.901, et seq.)**
**(By the Michigan Plaintiff, individually, and on behalf of the Michigan Class)**

271. Michigan Plaintiff Abby Long of the State of Michigan incorporates and realleges paragraphs 1 through 188 above as if fully set forth herein.

272. Michigan Plaintiff Abby Long brings this Count on behalf of herself and Michigan Class members pursuant to Mich. Comp. Laws Ann. § 445.901, et seq.

273. The Michigan Consumer Protection Act declares unlawful "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. § 445.903(1).

274. Defendant Dentsply engaged in unfair, unconscionable, and deceptive acts or practices, by, among other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

275. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

276. Through such unfair, unconscionable, and deceptive acts, Defendant Dentsply caused damages to Michigan Plaintiff Abby Long and the Michigan Class members. The deceptive practice described herein, in which Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. Michigan Plaintiff Abby Long and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

277. Mich. Comp. Laws Ann. § 445.911(1) provides for declaratory relief. Michigan Plaintiff Abby Long, on behalf of herself and the Michigan Class members, seeks a declaration that Defendant Dentsply's marketing and advertising of the Products violate the Michigan Consumer Protection Act.

278. Mich. Comp. Laws Ann. § 445.911(4) authorizes a class action to recover actual damages, and § 445.911(2) provides for reasonable attorneys' fees. Michigan Plaintiff Abby Long,

on behalf of herself and the Michigan Class members, seeks actual damages and reasonable attorneys' fees as provided by the Michigan Consumer Protection Act.

**COUNT X**
**VIOLATION OF MINNESOTA'S CONSUMER FRAUD STATUTE**
**(Minn. Stat. Ann. § 325F.68, et seq. and § 8.31)**
**(By the Minnesota Plaintiff, individually, and on behalf of the Minnesota Class)**

279. Minnesota Plaintiff Jacqueline Ahlers of the State of Minnesota incorporates and realleges paragraphs 1 through 188 above as if fully set forth herein.

280. Minnesota Plaintiff Jacqueline Ahlers brings this Count on behalf of herself and Minnesota Class members pursuant to Minn. Stat. Ann. § 325F.68, et seq. and § 8.31.

281. Minn. Stat. Ann. § 325F.69, subd. 1 prohibits "[t]he act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

282. Defendant Dentsply engaged in unfair, deceptive, and unconscionable acts or practices, by, among other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

283. Given all the surrounding facts and circumstances as alleged herein, the above-

described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

284. Through such unfair, deceptive, and unconscionable acts, Defendant Dentsply caused damages to Minnesota Plaintiff Jacqueline Ahlers and the Minnesota Class members. The deceptive practice described herein, in which Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. Minnesota Plaintiff Jacqueline Ahlers and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

285. Minn. Stat. Ann. § 8.31, subd. 3a provides for the recovery of damages, together with costs and disbursements, including costs of investigation and reasonable attorneys' fees. Minnesota Plaintiff Jacqueline Ahlers, on behalf of herself and the Minnesota Class members, seeks damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, as provided by Minn. Stat. § 8.31, subd. 3a.

286. Minn. Stat. Ann. § 8.31, subd. 3a further authorizes other equitable relief as determined by the court. Minnesota Plaintiff Jacqueline Ahlers, on behalf of herself and the Minnesota Class members, seeks any such other equitable relief as the Court deems appropriate.

## COUNT XI
## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
**(N.J. Stat. Ann. § 56:8, et seq.)**
**(By the New Jersey Plaintiffs, individually, and on behalf of the New Jersey Class)**

287. New Jersey Plaintiffs Amanda Abrahamowicz and Elizaveta Lapshina of the State of New Jersey incorporate and reallege paragraphs 1 through 188 above as if fully set forth herein.

288. New Jersey Plaintiffs Amanda Abrahamowicz and Elizaveta Lapshina bring this Count on behalf of themselves and New Jersey Class members pursuant to N.J. Stat. Ann. § 56:8,

et seq.

289. The New Jersey Consumer Fraud Act (hereinafter "NJCFA") declares unlawful "the act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud… or the knowing, concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission…." N.J. Stat. Ann. § 56:8-2.

290. Defendant Dentsply engaged in a commercial practice that is unconscionable or abusive, deceptive, and fraudulent with the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission by, among other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

291. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

292. Through such unconscionable, abusive, deceptive, and fraudulent acts, Defendant Dentsply caused damages to New Jersey Plaintiffs Amanda Abrahamowicz and Elizaveta Lapshina and the New Jersey Class members. The deceptive practice described herein, in which

Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. New Jersey Plaintiffs Amanda Abrahamowicz and Elizaveta Lapshina and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

293. N.J. Stat. Ann. § 56:8-19 provides for the recovery of treble damages, attorneys' fees, filing fees, and costs, in addition to any other appropriate legal or equitable relief. New Jersey Plaintiffs Amanda Abrahamowicz and Elizaveta Lapshina, on behalf of themselves and the New Jersey Class members, seek treble damages, reasonable attorneys' fees, filing fees, and costs and any other such appropriate legal or equitable relief as provided by N.J. Stat. Ann. § 56:8-19.

## COUNT XII
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW
**(N.Y. Gen. Bus. Law § 349, et seq.)**
**(By the New York Plaintiffs, individually, and on behalf of the New York Class)**

294. New York Plaintiffs Christine Bukowski and Katherine Gerdes of the State of New York incorporate and reallege paragraphs 1 through 188 above as if fully set forth herein.

295. New York Plaintiffs Christine Bukowski and Katherine Gerdes bring this Count on behalf of themselves and New York Class members pursuant to N.Y. Gen. Bus. Law § 349(a).

296. New York General Business Law (hereinafter "N.Y. Gen. Bus. Law") declares unlawful "unfair, deceptive, or abusive acts or practices in the conduct of any business, trade, or commerce." N.Y. Gen. Bus. Law § 349(a).

297. Defendant Dentsply engaged in unfair, deceptive, and abusive acts or practices in the conduct of any business, trade, or commerce, by, among other things, doing the following:

(a) misrepresenting the level of doctor oversight concerning the Products;

(b) misrepresenting the effectiveness of the Products;

(c) misrepresenting the safety of the Products;

(d) failing to reasonably inform the public of adverse events associated with the Products; and

(e) failing to correct false, misleading, or deceptive statements about the safety and effectiveness of the Products.

298. Given all the surrounding facts and circumstances as alleged herein, the above-described statements by Defendant Dentsply were likely to mislead and deceive consumers acting reasonably in the same circumstances.

299. Through such unfair, deceptive, and abusive acts, Defendant Dentsply caused damages to New York Plaintiffs Christine Bukowski and Katherine Gerdes and the New York Class members. The deceptive practice described herein, in which Defendant Dentsply participated and is responsible for, allowed Byte to charge a premium for the Products that it would not be able to command absent the deceptive practice. New York Plaintiffs Christine Bukowski and Katherine Gerdes and other consumers of the Products paid more for the Products than they otherwise would have had the truth been timely revealed and not concealed from them.

300. N.Y. Gen. Bus. Law § 349(h) provides for the recovery of actual damages and reasonable attorneys' fees. New York Plaintiffs Christine Bukowski and Katherine Gerdes, on behalf of themselves and the New York Class members, seek actual damages and reasonable attorneys' fees as provided by N.Y. Gen. Bus. Law § 349(h).

301. Pursuant to N.Y. Gen. Bus. Law § 349(h), New York Plaintiffs Christine Bukowski and Katherine Gerdes, on behalf of themselves and the New York Class members, further seek increased damages to the extent authorized by law upon a finding that Defendant's violations were willful or knowing.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that the Court enter judgment against Defendant Dentsply and award the following relief:

a. certify the Classes as proposed herein, designating the Plaintiffs as representatives of each of their respective State Classes, and appointing undersigned counsel as Class Counsel;

b. enter declaratory relief to the effect that Defendant Dentsply's conduct is violative of the statutes set forth above;

c. award restitution and disgorgement of all monies Defendant Dentsply wrongfully acquired by means of the unlawful, misleading, deceptive, unfair, and fraudulent practices alleged herein, including under the California Unfair Competition Law and each other Count providing for restitution;

d. award actual and compensatory damages to Plaintiffs and Class members on every Count that provides for damages, in the amount of the price premium and monies paid for the Products;

e. award all statutorily enhanced damages to which the Plaintiff and Class members are entitled under applicable law, including treble, multiple, and minimum statutory damages as pleaded in the respective Counts;

f. award punitive and exemplary damages to the extent authorized by the applicable statutes as set forth above;

g. award the Plaintiffs and the State Classes all reasonable attorneys' fees, litigation expenses, and costs;

h. award the Plaintiffs and the State Classes any and all pre-judgment and post-

judgment interest as allowed by law; and

i. grant such other and further relief this Court deems just and appropriate.

## JURY TRIAL DEMAND

The Plaintiffs, on behalf of themselves and the Class members, demand trial by jury of all issues so triable.

Respectfully submitted,

**LEE SEGUI, PLLC**
421 N. Harrington St.
Suite 460
Raleigh, NC 27603
Telephone: 919-421-7784

By: /s/ Matthew E. Lee
Matthew E. Lee
N.C. Bar No. 35405
mlee@leesegui.com
Jeremy R. Williams
N.C. Bar No. 48162
jwilliams@leesegui.com
Katharine W. Batchelor
N.C. Bar No. 58261
kbatchelor@leesegui.com

**LAW OFFICES OF JORDAN A. DRESNICK, PLLC**
901 Brickell Key Blvd.
Suite 2901
Miami, FL 33146
Tel.: 786-220-8785

By: /s/ Jordan A. Dresnick
Jordan A. Dresnick*
Florida Bar No. 058529
E-mail: jordandresnick@gmail.com

**GROSSMAN YAFFA COHEN, P.A.**
2525 Ponce de Leon Boulevard, Suite 1150
Coral Gables, FL 33134
Telephone: 305-442-8666

Facsimile: 305-285-1668

By: /s/ Manuel A. Arteaga-Gomez
Stuart Z. Grossman*
Fla. Bar No. 156113
szg@gyclawfirm.com
Manuel A. Arteaga-Gomez*
Fla. Bar. No. 18122
aag@gyclawfirm.com
Ryan J. Yaffa*
Fla. Bar. No. 1026131
rjy@grossmanroth.com
Abigail Wettstein*
Fla. Bar. No. 1070053
aw@gyclawfirm.com

*Attorneys for Plaintiffs*

**Admitted Pro Hac Vice*